**45 So.2d 357**

## YOUNG v. MULROY.

### No. 39040.

Feb. 13, 1950.

Rehearing Denied March 20, 1950.

Wm. C. Orchard, Dart, Guidry & Price, New Orleans, for plaintiff and appellant.

George E. Konrad, Warren M. Simon, New Orleans, for defendant-appellee.

HAMITER, Justice.

The dispute in this petitory action concerns the ownership of a certain double cottage in the City of New Orleans, bearing Municipal Nos. 1129-1131 Fourth Street, the record title to which was in the name of Jacob Young (hereinafter sometimes referred to as decedent) at the time of his death.

Plaintiff, Mrs. Wilhelmina B. Young, claims it by inheritance from decedent (her son). The position of defendant, Miss May Louise Mulroy, is that the property was purchased by her and that the title thereto was placed in decedent's name solely for her benefit and convenience. In support of this position she relies on a document termed a counter letter purportedly signed by decedent.

The district court, after trial, rendered judgment in favor of defendant. Plaintiff appealed. After the lodging of the transcript in this court plaintiff filed a motion to remand so that alleged newly discovered evidence could be received.

The record discloses that by a notarial act of sale dated December 30, 1942, the Home Building & Loan Association of New Orleans transferred and conveyed the property in question to Jacob Young. The deed recited a credit consideration of $3200, payable in monthly installments of not less than $27 each, which was secured by the usual vendor's lien and special mortgage.

Jacob Young died intestate on August 7, 1943. In his succession proceedings, by an ex parte judgment of date December 10, 1943, plaintiff (decedent's mother) was recognized as his sole heir at law and was sent into possession of all of his property, particularly the contents of a jewelry store and the above mentioned disputed real estate.

On December 15, 1943, defendant appeared before a Notary Public of Orleans Parish and executed an act of deposit with respect to the document on which she relies herein. The notarial act so executed, which describes the deposited document, reads in part as follows:

" * * * Said appearer declaring that she has left said document with me, Notary, to be herewith attached and to remain so attached for future reference.

"Said document reading as follows, to-wit:

"New Orleans, La. 3/16, 1943

"No. 1129-1131 Fourth Street is the property of Miss May Louise Mulroy. It has been put in my name for convenience only.
"(Signed) Jacob Young.

"(written on a portion of a National Bank of Commerce check, bearing check No. 1723.)

"And now the said appearer, Miss May Louise Mulroy, further declared that she makes this Act of Deposit, for the purpose of creating public notice of the counter letter herein deposited, executed by the said Jacob Young, whose signature is thereunto affixed, as a result of said property having been purchased in his name; and of the fact that she is the bona fide owner of the said property Number 1129–1131 Fourth Street, which is more fully described as:

*    *    *    *    *    *

"That said property was acquired in the name of Jacob Young, as per Conveyance Office Book 526, Folio 160, for convenience only, which fact was duly declared by the said Jacob Young, as per the said counter letter herewith deposited, * * *."

The date on the deposited document, according to the record, was inserted with pen and ink, whereas the language immediately above the signature was typewritten.

On this appeal the primary question presented for determination is whether such document is genuine. If it is, the district court correctly decreed the dismissal of this suit; if not, plaintiff is entitled to judgment.

In urging that it is not genuine plaintiff's counsel contend: (1) The alleged counter letter was not executed as such by Jacob Young, but rather the typewritten words were inserted above his signature by Miss Mulroy, the defendant, or someone else without his knowledge; and (2) It is nothing more than a simulated or gratuitous transfer, i. e., a sale without consideration.

With reference to the preparation of the disputed document, defendant testified that on the date thereof (March 16, 1943) decedent came to the office of the Youngstown Sheet & Tube Company, located in the Whitney Building of New Orleans, where she was employed as a secretary; that he withdrew from his pocket a blank check, bearing No. 1723, and cut it in two pieces; that on one of the pieces she typed, in his presence and in accordance with his instructions, the language in question, after which he affixed his signature; and that she placed the document in her wallet and thereafter kept it in her possession until the execution of the notarial act of deposit.

Plaintiff's counsel sought to contradict this testimony of the defendant only by means of cross examination, using in connection therewith some of decedent's check stubs and cancelled checks which, they contend, appear to be partially in the handwriting of defendant. They proceeded on the theory that defendant often aided decedent in the preparation of his checks by writing the payee's name and the date on each check and on the accompanying stub; that the decedent would then affix his signature to the check and subsequently write in the amount when determined; and that the check used in the execution of the counter letter was one thus partially prepared and signed, the defendant having retained it and later cut off and destroyed that portion thereof containing the payee's name which, according to the matching stub bearing No. 1723, was "Southland". This theory, of course, is suggestive of fraud on the part of defendant; the record, however, is insufficient to convict her of it. Plaintiff's counsel offered no evidence whatever identifying the alleged payee "Southland" or showing that its account was never paid. Moreover, if fraud had been perpetrated the decedent, undoubtedly, would have discovered it prior to his death which did not occur until August 7, 1943, almost five months after the date noted on the check stub No. 1723. He was a reputable business man, engaged in the jewelry business, and it must be assumed that he would have made an investigation of any of his checks outstanding for that period of time.

As to the second contention of plaintiff, which is that the counter letter evidenced merely a simulated sale or gratuitous transfer, defendant testified: For about sixteen years she, along with her mother and sisters, occupied the controverted premises. In the latter part of 1942 she and Jacob Young, to whom she was engaged to be married, negotiated for her purchasing the property. After their several conferences with the then owner, Mrs. Elizabeth C. Callan, an agreement was reached whereby decedent would give to such owner his unsecured promissory note of $1000 and would finance the balance of the purchase price by a loan from a homestead association. The title was to be taken in the name of Jacob Young, as a convenience to defendant, because the homestead loan was necessary and she had no credit rating. Since December 30, 1942, the date on which Mrs. Callan transferred the property to the Home Building & Loan Association and it in turn conveyed to Jacob Young (in keeping with the agreement), the defendant has made all of the payments due; she has contracted and paid for all necessary repairs and has taken care of the taxes; she has paid no rent to anyone; and she has continuously lived in the premises with her mother and sisters.

The defendant further testified, as before shown, that decedent came to the place

where she was employed on March 16, 1943 (approximately two and one-half months after the purchase), and she, in accordance with his instructions, prepared the disputed counter letter which he executed.

Appearing as a witness for the defendant was Miltner J. Goll, secretary-manager of the mentioned Home Building & Loan Association and who had been connected with that organization since April 12, 1937. It was his testimony that Jacob Young, whom he had known for many years, " * * * called me up and I went up to his place, but I had been up there quite a number of times, and he asked me to look at this particular piece of property before anything was ever done on it. He and I went over there one evening in my car and he wanted to know how much I would lend on it and he said that his girl friend wanted to buy the property; that they lived there a long time ago. I didn't know anythink about this and I told him I didn't know just exactly how much we would lend —it would be subject to the C. A. B.—Central Appraisal Bureau. He then told me that he would like to find out. And I had the property appraised and he asked me then if it would be better to put it in his name because of the fact that his friend didn't have a credit rating, or something to that effect. I told him * * * probably it would be better, and he filed the application for the loan."

Mr. Goll further testified that most of the payments on the loan were by cash; that defendant and Young (prior to his death) always came together to the company office to make them; that after Young died defendant paid all of the installments except one, or possibly two, which was by check given by some one the name of whom he didn't remember; and that defendant herself contracted for all repairs on the property.

The only witness offered by plaintiff in rebuttal of the testimony of defendant and of Mr. Goll was Nicholas Callan. He merely testified to the negotiations had between Young and his mother (who had since died) for the purchase of the property; that Young gave the unsecured $1000 note to his mother; and that certain payments had been made on that note, but whether by Young or by the defendant he did not know.

From the record as made up we must conclude that plaintiff has failed to discharge the burden which she carried of showing, as she contends, that the document produced and relied on by defendant is not genuine. In fact, the evidence before us fully sustains the written reasons given by the trial judge in announcing his judgment, they being as follows:

"The court had all of the testimony transcribed, and I am satisfied that the counter letter was signed and executed by Jacob Young in the manner as testified to by Miss Mulroy.

"Counsel for plaintiff would have the court decide this case on pure conjecture,

contending that the counter letter was not executed as such by Jacob Young; that the check on which the counter letter was executed, dated March 16, 1943, and signed by Jacob Young at that time, was held by defendant until after his death, and that then there was typed in the "writing" constituting the body of the counter letter, between the date and the signature of Jacob Young. There is no evidence to sustain such contention. In order for me to be in accord with such theory I would have to hold that Miss Mulroy's testimony was absolutely false and untrue, and this I cannot do.

"I am of the opinion that the property in question was purchased by the defendant, May Louise Mulroy; that said property was placed in the name of Jacob Young by her for her benefit and convenience; and that Jacob Young executed the counter letter in pursuance thereof."

■ The motion to remand cannot be granted. In it plaintiff urges that there is newly discovered evidence which should be received, it tending to show that on several occasions defendant, after the death of Jacob Young and prior to the recordation of the counter letter, offered to lease and rent the property. Applicable here is the observation made with reference to a similar motion in the case of Kinnebrew et al. v. Louisiana Ice Company, Inc., 216 La. 472, 43 So.2d 798, 808, which was that " * * * we are not disposed to permit litigants to try their cases by piece meal and

continue protracted litigation as to facts that could have been established on the original trial."

For the reasons assigned the judgment appealed from is affirmed.