SIMON, Justice.
 

 Plaintiff, as sublessor, seeks the cancellation of a mineral sublease and the two assignments of interest thereunder against his sublessee, the late Maurice T. Grubb, and the latter’s assignees, H. L. Hawkins and Faris R. Russell, because of an alleged
 
 *259
 
 forfeiture resulting from defendants’ failure to sufficiently and diligently develop the tract of land affected thereby, and the recovery of damages and attorney’s fees.
 

 This case was before us on a prior appeal
 
 [1]
 
 from the judgment of the district court wherein an exception of no cause or right of action filed by defendants was sustained and plaintiff’s suit dismissed. We reversed the trial court’s judgment, overruled the exception and remanded the case for trial on the merits.
 

 Thereafter plaintiff filed a supplemental petition seeking an increase in the amount of attorney’s fees originally prayed for. Defendants filed answer to plaintiff’s original and supplemental petitions, wherein they admitted the execution of the lease, sublease and the two assignments and the drilling of four wells, but denied forfeiting said sublease for noncompliance with the development clause therein and affirmatively averred the drilling of two additional wells in 1948, after suit was filed. Thereafter plaintiff filed a second supplemental petition seeking additional damages for the value of oil produced from the said two wells and a further increase in attorney’s fees.
 

 Defendants answered the second supplemental petition and interposed an exception of no cause of action and a plea of prescription, which exception and plea were referred to the merits.
 

 After a hearing on the merits, the trial judge, assigning written reasons, held that the sublessee and his assignees had breached their obligation to develop the property prudently and reasonably, and that plaintiff was entitled to a cancellation of the sublease, save and except as to an area of 5 acres in the form of a square around the wells producing as of April 7, 1946, said wells to be in the center of the 5-acre square. Plaintiff was awarded $3,000 attorney’s fees. His demands for damages were rejected.
 

 A rehearing was granted below solely for the purpose of substituting the legal representatives of the deceased Maurice T. Grubb, an original defendant, and judgment was rendered as originally decreed. All defendants have appealed.
 

 Appellee answered this appeal and prays that the judgment below be reversed insofar as it dismisses his claims for damages, and amended so as to increase the award of attorney’s fees, but in all other respects that it be affirmed.
 

 Appellants submit a written motion to strike appellee’s answer for the reason that it was not filed within the time limit as required by Article 890 of the Code of Practice.
 

 This appeal was fixed for argument on May 26, 1955. Appellee’s answer was filed in this court on May 23, 1955. The pertinent part of Article 890 of the Code of
 
 *261
 
 Practice declares that if the appellee “ * * * demand the reversal of any part [of the judgment], or damages against the appellant he shall file his answer at least three days before that fixed for the argument otherwise it shall not be received * *
 
 *."
 

 Appellee urges the timely filing of his answer in view of the fact that he mailed the same to the clerk of our court on May 20, 1955; that Saturday and Sunday, May 21 and 22, being legal holidays and unavailable for the filing of any pleadings, the receipt thereof by the clerk on the following Monday, May 23, should be held to constitute timely filing.
 

 This contention is clearly without substance. In the Succession of Coleman, 177 La. 898, 149 So. 513, 514, the appeal therein was fixed for May 31, 1933; the answer was filed two days before the date of hearing, namely, on May 29, 1933. The answer had in fact been mailed from Monroe, Louisiana, on May 27, 1933, and did not reach the clerk for filing until May 29, 1933. Saturday afternoon being a half legal holiday and the next day,' Sunday, being a full legal holiday, his answer was not received by the clerk for filing until Monday, May 29, 1933. We held in that instance that the intervening legal holidays did not alter the application of the provisions of Article 890 of the Code of Practice. We said:
 

 “ * * * The count is made, under the Code,
 
 front the day the answer is filed
 
 — not sent to be filed — to the day fixed for argument. Litigants must present their pleadings timely for filing. * * * ” (Italics ours.)
 

 In the case of H. B. Stevens Co., Ltd. v. Board of Administrators of Tulane Educational Fund, 136 La. 1013, 68 So. 109, we held in effect that both the day for filing the answer and the day set for argument are excluded from the three-day period provided by Code of Practice Article 890.
 

 We quote with approval the following:
 

 “ * * * The rule of extending one day the time within which or upon which an act may be done when the last day for performance falls on a Sunday does not apply and does not extend the time for an act which must be performed ‘not less’ than or ‘not later’ than a given number of days before a designated time, and does not extend the time for an act that must be performed ‘prior’ to or ‘before’ a specified date, since to extend the time in such instances would be to nullify the legislative intent that the act must be performed more than a designated number of days before the event specified. * * *” 86 C.J.S., Time, § 14(2), page 882.
 

 It is clear, therefore, that appellee’s answer was untimely filed, and no consideration or relief can be given to the prayer contained therein.
 

 
 *263
 
 Hence, the crucial issue to be resolved by us is whether the sublease in question has been forfeited as a result of defendants’ failure to reasonably and diligently develop the land affected thereby, and, if so, whether the attorney’s fee was correctly awarded below.
 

 The record discloses that on April 10, 1940, Mrs. Josephine S. Watkins granted to plaintiff an oil, gas and mineral lease on four tracts of land in the Port Barre Oil Field in the Parish of St. Landry, one of which contained 335.19 acres and is the land involved in this suit. The lease contained the following development clause:
 

 “If as a result of Lessee’s operations hereunder oil or gas shall be discovered in paying quantities, then and in that event, after the expiration of the primary term thereof, Lessee shall and he hereby obligates himself and
 
 Ms assigns to prosecute diligently
 
 the development of the leased premises for the production therefrom of oil and gas to a fair and reasonable extent, or in the alternative
 
 to release such portions of the leased area as Lessee may be unwilling to
 
 develop(Italics ours.)
 

 On October 21, 1940, by a contract styled “An Assignment” and for a consideration of $100 cash and the retention of a %sth overriding royalty interest, plaintiff subleased the 335.19-acre tract to defendant Grubb, who subsequently by separate instruments sold and assigned specified interests in the sublease to his co-defendants H. L. Hawkins and Faris R. Russell, respectively. The sublease executed between plaintiff and defendant Grubb contained the following development clause, the pertinent part of which provides:
 

 “ * * * and Assignee shall thereafter commence operations for the drilling of said well not later than February 1, 1941, and shall thereafter prosecute the drilling of said well to completion, or abandonment,
 
 and shall develop the leased premises for oil and gas with reasonable diligence, subject to the terms of said lease.”
 
 (Italics ours.)
 

 The defendants conducted operations on said land by drilling three wells: the first in June, 1941; the second in September, 1941; and the third in June, 1942. All proved to be producing wells, until in June, 1943, the third well “went dry” and was abandoned by the defendant.
 

 On August 31, 1943, plaintiff wrote to defendants demanding further development of the land, and in 1944 defendants drilled a fourth well, which proved non-productive. Defendants made no further efforts to develop the land in question, for which reason plaintiff addressed a series of letters, the first being dated March 7, 1945 and the last February 28, 1946, demanding further development in accordance with the obligations contained in their sublease. These repeated demands proved fruitless. Whereupon, plaintiff instructed his attorney to place the defendants in formal default for
 
 *265
 
 the purpose of cancelling the sublease, which plaintiff’s attorney did by letter addressed to defendants on March 27, 1946, said default to be effective as of April 7, 1946. This formal placing in default was disregarded and ignored by defendants. Whereupon plaintiff, on November 14, 1946, filed this suit.
 

 It is observed that the production of oil from the three successful wells drilled by the defendants dwindled from a peak of 11,890 barrels for the month of August, 1942, to 2,884 barrels for the month of April, 1946, the 7th day of which month the formal default had become effective.
 

 We can readily conceive that the steady decrease in production undoubtedly prompted plaintiff to make the repeated demands for further development of the entire area subleased. In addition to the written demands, the record discloses that the landowner and original lessor repeatedly expressed her dissatisfaction with the development so far conducted by defendants, coupled with her personal demands upon plaintiff for further development of the land in compliance with the development clause of his lease, under penalty of forfeiture thereof.
 

 The parties hereto concede that there was no Department of Conservation spacing regulation affecting the drilling of wells on the property in question; and that, in' view of the absence thereof and in accordance with' the usage and custom prevailing in the business of drilling and developing oil fields in the Port Barre Oil Field, an area of 5 acres in as near a square form as possible with the well in the center is the recognized area that the producer of oil is entitled to retain around a producing well when the mineral lease under which production is obtained is cancelled, forfeited, released or abandoned. However, plaintiff urges that the recognition and enforcement of this custom and usage should be limited and confined to the second well drilled, which he asserts was the only well producing before this suit was filed, and that said custom and usage, under the facts here presented, does not in any respect affect his right to a cancellation of the sublease covering the remainder of the 335.19-acre tract. •
 

 The defendants argue that the production thus far obtained from the land constitutes diligent and reasonable development and therefore cannot be held to be a violation of the development clause of the lease. There is no factual or legal substa,nce to this contention. The original .leas.e to plaintiff does not contain any provision or clause to the effect that the' drilling of ¡one or more producing wells would constitute such development as would preserve ‘ the lease for the entire area affected thereby. On the contrary, the obligations imposed on the original lessee and his assigns demand diligent prosecution in development, of. the leased premises, or, in the alternative,-the release of such portions thereof as lessee may be unwilling to develop, Her? was; a
 
 *267
 
 specific and express obligation to diligently prosecute the development of the entire area herein leased. Even in the absence of such an expressed provision, our law imposes upon a lessee the implied obligation of reasonable development of the entire area.
 

 The record shows that the drilling of the four wells was confined within the far eastern terminus of the property, a relatively small area in comparison with the entire acreage subleased. It is also shown that other than the drilling and reworking of said wells, there was no activity whatsoever in the mineral development of the remaining area of this large acreage, nor was there any activity which would evidence any intention on the part of defendants to do so, from the time of the drilling of the fourth well (a “dry hole”) in 1944 until the filing of this suit in 1946. The negative conduct of these defendants constitutes, under our law, a violation of the specified and expressed obligations, as well as the implied obligations of the contract.
 

 This court has consistently held that:
 

 “ * * * the main consideration of such a lease is the development of the land for oil and gas and that the lessee must either develop with reasonable diligence, or give up the lease.” Caldwell v. Alton Oil Co., Inc., 161 La. 139, 108 So. 314, 315. See, also, Pipes v. Payne, 156 La. 791, 101 So. 144; Stubbs v. Imperial Oil & Gas Co., 164 La. 689, 114 So. 595; Logan v. Tholl Oil Co., Inc., 189 La. 645, 180 So. 473; Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26; Merrill, The Law Relating to Covenants Implied in Oil and Gas Leases, 2d Ed., sec. 122, p. 280, sec. 123, p. 284; 2 Summers, Oil and Gas, Perm. Ed., sec. 414, p. 370.
 

 This holding is predicated on the well-recognized theory that a development which fails to amount to a reasonable production affording the lessee a net profit and the lessor an adequate consideration for the continuance of the lease is at variance with the intent and contemplation of the parties and can be said to be no development at all. The rights of the lessee alone are not the determining factor, whether the production is in paying quantities or not. To so hold would ignore the rights of the landowner. Such contracts are commutative and require a mutuality of rights and interest. Failure to recognize and apply this wholesome principle would lend countenance to unfair and unjust dealings.
 

 Likewise, in Hutchinson v. Atlas Oil Co., 148 La. 540, 87 So. 265, 270, it was held:
 

 “ * * * time and prompt development become of the essence of such contracts, once oil or gas has been found.”
 

 In the original hearing of this case, supra, Moise, J., as the organ of this court,
 
 *269
 
 judiciously said [215 La. 967, 41 So.2d 848]:
 

 “The rationale of the reasoning for relief by petitioner is supported in the case of Kyle v. Wadley, D.C., 24 F.Supp. 884, 887, by the statement that ‘ * * * if the property has, as contended by defendants in their pleadings, been fully developed,’ there can be ‘no justification in permitting them to hold on to this large tract of land without further activity, and they should surrender it.’ ”
 

 During the trial of this matter, defendants attempted to justify their failure to drill more wells on the land on the basis that the geological information available to them disclosed that it was highly improbable that oil, gas or other minerals would have been discovered in paying quantities ; that,’ therefore, the drilling of additional wells prior to the filing of suit would have resulted in incurring unnecessary and unreasonable expenses, or, in other words, exploration and not development. In oral arguments before us, counsel for defendants admit that their failure to have engaged in any further mineral activities was based primarily upon the belief that it would have proved economically unsound, as well as an unreasonable financial gamble.
 

 In the case of Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 674, 78 L.Ed. 1255, 93 A.L.R. 454, a lessor, on the ground of insufficient development, brought suit for cancellation of an oil lease containing two adjácent tracts of 320 and 40 acres, respectively. It appeared that two wells were drilled on the 40-acre tract, but no development whatever was had on the 320-acre tract. The observation made by the court in that case is applicable and pertinent here:
 

 “ * * * The justification for the respondent’s position is that the geologic data and the experience upon surrounding lands are both unfavorable to the discovery of oil or gas upon the east half of section 16 (the 320-acre tract). The respondent’s officers state that they desire to hold this tract because it may contain oil; but they assert that they have no present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to the interests of the lessor. The production of oil on a small portion of the leased tract cannot justify the lessee’s holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.”
 

 In the case of Fox Petroleum Co. v. Booker, 123 Old. 276, 253 P. 33, 38, though it involved the cancellation of a lease bn the theory of abandonment, the implied ob
 
 *271
 
 ligation of a lessee, which is significantly applicable here, was expressed as follows:
 

 “The principle, as we understand it, is that development of every part of the lease is an implied condition. Therefore, whether the undeveloped portion be a single tract remote from the rest, or a considerable portion of' a very large tract, * * * or the east one hundred acres of a tract of 160, it is an implied condition that the lessee will test every part. * * * ”
 

 The defendants further pleaded that plaintiff is estopped to claim a forfeiture of the lease because he had continued to receive and accepted his Vieth overriding royalty from the production of the wells drilled. We shall consider this plea as having been abandoned, for it has not been urged in defendants’ written brief nor in the oral arguments before us.
 

 Obviously, the determination of the question whether defendants have sufficiently developed the leased property, in compliance with the development clause contained in the sublease and its implied obligations, can be resolved only after a consideration of all the facts. We recognize the difficulty of laying down any comprehensive rule which so largely involves one of fact, and, therefore, the merits of each case must be determined according to its particular circumstances.
 

 We are convinced that the conclúsions of fact reached by the trial judge are clearly and amply supported by the record. In the absence of manifest error, we will not disturb his findings of fact. Olivier v. Abunza, 226 La. 456,
 
 76
 
 So.2d 528. This salutary rule is so well anchored in our jurisprudence that further citation would be superfluous.
 

 The district judge further found that plaintiff was entitled to an attorney fee of $3,000 as provided for in Act 168 of
 
 1920,
 
 now LSA-R.S. 30:102, which provides in part:
 

 “If a lessee, having been given written notice demanding cancellation of the lease, fails or refuses" to comply within ten days, he shall be liable to the lessor for a reasonable attorney’s fee incurred by the lessor in bringing suit to have the cancellation adjudged. * *
 
 *"
 

 Defendants contend that ordir narily an' award of attorney’s • fees can be made only through express statutory authority and that such a statute is punitive in nature and must be strictly; construed. They urge that, conceding that the statute provides for attorney’s fees, its provisions were enacted solely for. the benefit of a lessor in connection with a suit for the' cancellation of a lease, and that it does not afford similar relief to a sublessor in a suit for the cancellation of a sublease. Such contention is.untenable. A sublessor, as in the case at bar, assumes all rights, interest, obligations, penalties, etc., enjoyed by and granted to the-original lessor.
 

 
 *273
 
 We find no error or unreasonableness in the award in favor of plaintiff for attorney’s fee for services rendered.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the district court be, and the same is hereby affirmed. Defendants to pay all costs.
 

 [1]
 

 . Wier v. Grubb, 216 La. 967, 41 So.2d 846.