88 So.2d 1 (1956)
230 La. 132
Paul VIATOR
v.
HAYNESVILLE MERCANTILE COMPANY, Inc., Trustee,
No. 42395.
Supreme Court of Louisiana.
May 7, 1956.
Walter B. Gordy, Jr., Abbeville, W. S. Waller, W. M. Phillips, Shreveport, for appellant.
Kibbe & Bailey, Abbeville, for plaintiff-appellee.
*2 SIMON, Justice.
Plaintiff instituted this suit to have the mineral royalty interest conveyed by him to defendant declared extinguished by the prescription of ten years liberandi causa.
Defendant, contending that prescription had been interrupted by certain drilling operations conducted on said land, refused the demand of plaintiff to voluntarily cancel the mineral deed in question.
Upon trial on the merits, the district court rendered judgment in favor of plaintiff, decreeing that the royalty interest conveyed by him to defendant had prescribed and therefore reverted to plaintiff. Attorney fee in the sum of $300.00 was awarded in favor of plaintiff. Defendants have appealed from said judgment.
The record reveals that this case was submitted for decision on an agreed stipulation of facts entered into between the parties, which are substantially as follows:
By deed dated March 16, 1940, plaintiff, Paul Viator, conveyed to defendant, Haynesville Mercantile Company, Inc., Trustee, a 1/32 mineral royalty interest in the following described tract of land owned by plaintiff and located in Vermilion Parish:
13.4 acres, more or less, in Fractional Section 13, Township 13, South, Range 4 East, being a tract of land triangular in shape, and bounded on the North and East by Public Road, West by Edoris Meyers, and South by Grantor.
27.57 acres, more or less, in the northern portion of the Northwest Quarter of Section 24, Township 13, South, Range 4 East, and bounded on the North by Edoris Meyers, and grantor, South by Sevignier Touchet, West by Estate of Eli Dugas, and East by the Public Road.
On June 14, 1948, more than eight years after the said sale of royalty interest, Viator executed an oil, gas and mineral lease in favor of Union Oil Company of California, having a primary term of five years and covering the same land. Under paragraph 4 of said lease the lessee was authorized to pool or combine the land covered thereby with other land, lease or leases in the immediate vicinity thereof for the purpose of producing oil, gas and other minerals. The defendant to whom the mineral royalty interest under said land was conveyed was not a party to the said lease nor did it execute any other instrument authorizing the pooling thereof.
No well was drilled on the Viator tract. However, on April 24, 1949, the lessee, Union Oil Company of California, commenced the drilling of a well known as "Louise Thibodeaux No. 1" on a tract of land owned by Louise Thibodeaux. On or about June 4, 1949, this well was completed as one capable of producing gas and condensate in commercial quantities but was shut in on the same day, there being no available market. The rules and regulations of the Commissioner of Conservation prohibit the production of gas and other minerals in a well in the absence of a market. Except for testing purposes, no oil, gas or mineral was produced from the above well from June 4, 1949 to January 18, 1951, when a market for the production was secured. The Union Oil Company has produced and is presently producing gas and condensate in commercial quantities therefrom.
Within ten years of the sale of the royalty interest here in dispute, on February 13, 1950, the lessee, Union Oil Company of California, executed and filed for recordation an instrument creating a unit for production of gas and condensate comprising a specific area of 320 acres, more or less, designated as "Louise Thibodeaux Unit V". Among other lands, this unit included a portion of the tract leased by Paul Viator which is subject to the said royalty interest herein in dispute, the Louise Thibodeaux tract on which the aforesaid well was located, and the lands of Basil Sonnier. The Sonnier mineral lease in favor of Union Oil Company of California did not authorize the formation of a unit such as the one declared upon by the said lessee.
Apparently aware that it had improperly included the lands of Basil Sonnier within *3 its first declaration of unitization, on October 31, 1950, lessee secured from Basil Sonnier an amendment to his lease authorizing the pooling of his land with other lands and leases for production purposes. It is significant that this amendment made no reference whatever to the Louise Thibodeaux Unit V which had been declared February 13, 1950. It is also significant that this amendment was executed more than ten years and six months after the date of appellant's acquisition of its 1/32 royalty interest from Viator.
Having thus obtained an amendment to the Sonnier lease, Union Oil Company of California by act dated February 12, 1951, filed a second declaration of unitization, pooling the identical acreage it had pooled and unitized by its declaration of February 13, 1950. Clearly, the declaration filed on February 13, 1950 was an unauthorized attempt to pool the land of plaintiff with the land leased from Sonnier, the latter not having authorized the same under his mineral lease. Thus, the question presented is whether the declaration of February 13, 1950, is invalid for this want of authorization by the original Sonnier lease.
The identical factual issue here presented was recently considered by us in the case of Union Oil Co. of California v. Touchet, La., 86 So.2d 50, 53. The Louise Thibodeaux Unit V, declared on February 13, 1950, is the same unit, the formation of which was relied upon by the royalty owners in the Touchet case in their attempt to show the interruption of prescription and which is now again relied upon as a basis for the interruption of prescription in the case at bar. In the Touchet case, we said:
"Since the Louise Thibodeaux Well No. 1 was not located on the lands subject to the royalty right, there was no production from this tract and the royalty right here in dispute has prescribed for want of production, unless the operating unit formed by means of the declaration filed by the Union Oil Company on February 13, 1950, within 10 years of the date of the royalty sale,1 was valid; for, if so, then the area comprising the unit is treated as one tract and one lease, and production from any portion of the area making up the operating unit has the same effect on property situated within the unit as if the well was drilled and completed on each of the various tracts of land embraced in the area and under each of the leases. Accordingly, if the operating unit formed by the first declaration filed by the oil company was valid and effective, the royalty right has not prescribed." "[Footnote 1.] The second declaration discussed herein was filed by the oil company more than 10 years after the date of the royalty sale."
In the instant case, Viator expressly granted to the lessee the right "to pool or combine the acreage, royalty or mineral interest covered by this lease, or any portion thereof, with any other land, lease or leases, royalty and mineral interests in the immediate vicinity. * * *" We must necessarily conclude, as we did in the Touchet case, supra, that said right and authority granted by Viator to his lessee could be construed to mean only that such unitization should be with other leases in the immediate vicinity in which the lessee had authority to unitize. The declaration of February 13, 1950, having included within the unitized area the lands of Basil Sonnier, without his authority or consent, with that of the land of Viator and thus being an invalid unit, could not therefore serve as a basis for the interruption of prescription.
There being no production from the Viator Tract, and the declaration of February 13, 1950 being null and void, it follows that the fact that production was had from the Louise Thibodeaux tract cannot be considered as production from the Viator tract legally sufficient to interrupt the prescription of ten years liberandi causa. Therefore, we conclude that the 1/32 royalty interest conveyed to appellant has been lost by the tolling of prescription.
It is contended by appellants, the royalty purchasers herein, that in accordance *4 with the terms of the oil, gas and mineral lease to Union Oil Company of California, in order to keep said lease in effect, monthly payments of shut-in gas royalties were made to Viator for the period from June 14, 1950, to February 14, 1951, inclusive. It is argued that the acceptance of said payments by Viator constituted a ratification of the declaration of unitization of February 13, 1950, and that therefore Viator is estopped to question the validity thereof.
This contention is without merit. The first shut-in gas payment made to Viator was made on June 14, 1950, almost three months after the royalty interest conveyed on March 16, 1940, had prescribed by the prescription of ten years liberandi causa. No act of estoppel or ratification on the part of Viator occurring after March 16, 1950, could have revived the royalty interest claimed by appellant in this cause, said interest having prescribed. In the case of English v. Blackman, 189 La. 255, 179 So. 306, 311, we said:
"* * * When English accepted the benefits referred to, the servitudes which he granted were already prescribed. Since they had not been exercised and the running of prescription against them had not been interrupted within the ten-year period after their execution, they expired, became extinct. They were dead things, and the mere acceptance of the benefits of the new lease thereafter did not resurrect them. Accrued prescriptions cannot be `interrupted,' of course."
Therefore, it necessarily follows that even if Viator had accepted payments of shut-in royalties, a factual issue not borne out by the record, such payments would not have had the effect of reviving the royalty interest once owned by appellants which had already legally prescribed by the prescription of ten years liberandi causa. Also, see Arkansas Louisiana Gas Co. v. Thompson, 222 La. 868, 64 So.2d 202; Michel v. Efferson, 223 La. 136, 65 So.2d 115; Union Oil Co. of California v. Sevignier Touchet, supra; 31 C.J.S., Estoppel, § 109(b), p. 349.
The district judge further found that plaintiff was entitled to an attorney fee of $300.00, as provided for in Act 168 of 1920, now LSA-R.S. 30:102, which provides in part:
"If a lessee, having been given written notice demanding cancellation of the lease, fails or refuses to comply within ten days, he shall be liable to the lessor for a reasonable attorney's fee incurred by the lessor in bringing suit to have the cancellation adjudged. * *"
The above cited statute provides for attorney fees solely for the benefit of a lessor in connection with a suit for the cancellation of a lease as well as sublessors who assume all rights, interest, obligations, penalties, etc., enjoyed by and granted to the original lessor. Wier v. Grubb, 228 La. 254, 82 So.2d 1.
Ordinarily an award of attorney fees can be made only through express statutory authority, and such a statute is held to be punitive in nature and therefore must be strictly construed. Wier v. Grubb, supra. We necessarily conclude that this statute affording the right to attorney fees cannot be extended to cover the fees sought in the case at bar, a suit to cancel and erase the sale of a royalty interest.
Accordingly, for the reasons assigned, the judgment of the lower court is reversed, annulled and set aside insofar as it awards attorney fees in behalf of plaintiff, and in all other respects the said judgment is affirmed; defendant to pay all costs.
HAMITER, Justice (concurring in part and dissenting in part).
I concur in that part of the judgment which denies attorney's fees. Otherwise I respectfully dissent for the reasons which I assigned in Union Oil Co. of California v. Touchet, 229 La. 316, 86 So.2d 50.
*5 McCALEB, Justice (concurring in part and dissenting in part).
I agree that plaintiff is not entitled to recover attorney's fees. In my opinion, plaintiff has no case at all as defendant's royalty interest has not been extinguished by prescription. The operating unit formed by Union Oil Company on February 13, 1950, to which plaintiff gave his unconditional consent and from which production was obtained during the life of the royalty interest, was not invalid by reason of the oil company's failure to have Basil Sonnier's express consent at the time of its formation. The latter's consent, which was subsequently obtained, had a retrospective effect by virtue of Article 2041 of the Civil Code. See my dissenting opinion in Union Oil Co. of California v. Touchet, 229La.316, 86 So.2d 50.