**175 So. 744**

**NOEL ESTATE, Inc., v. LOUISIANA OIL REFINING CORPORATION.**

**No. 34193.**

May 24, 1937.

Rehearing Denied June 21, 1937.

Dickson & Denny, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, Robert Roberts, Jr., and George Conger, all of Shreveport, for appellee.

ODOM, Justice.

By contract dated July 16, 1927, J. L. Monkhouse leased to defendant a filling station for a consideration of $5,000 cash, in hand paid. The lease was for a period of five years from the date of the agreement "or as long thereafter as may be required to sell such quantities of gasoline and oils, which at the rate of one cent (1¢) per gallon for gasoline and fifteen cents (15¢) per

gallon for oils would pay to the lessee the sum of Five Thousand ($5,000) Dollars."

The lease was recorded. Plaintiff purchased the property from Monkhouse subject to the lease, and on April 13, 1936, brought this suit to cancel it, alleging that defendant had abandoned the leased premises. A copy of the lease contract was attached to and made part of the petition.

Defendant filed an exception of no cause of action, the basis of which is that plaintiff did not allege that defendant had been put in default prior to the filing of the suit. The exception was sustained and the suit dismissed. Plaintiff appealed.

The sole question presented is whether, under the facts set out in the petition and disclosed by the lease contract, it was necessary for plaintiff, prior to bringing suit to cancel, to put defendant in default. If it was, plaintiff has no cause of action, for it is conceded that defendant was not put in default.

Plaintiff alleged that defendant breached the lease contract by abandoning the leased premises and that it ceased to operate the filling station and vacated the property four months prior to the date on which the suit was filed. If this was an active breach of the contract, it was not necessary for plaintiff to put defendant in default. Defendant's theory is that this at most was no more than a passive breach, and, therefore, a putting in default was necessary.

It is true, as counsel for defendant point out, that defendant did not obligate itself to occupy and use the property for any length of time. For a consideration of $5,000, which it paid in cash when the contract was signed, it purchased the privilege of using the property for five years, or for such additional time as might be required in order to enable it to sell such quantities of gasoline and oils as, at the rate of one cent per gallon on gasoline and fifteen cents per gallon on oils, would pay the lessee the sum of $5,000. In other words, if at the end of the five-year period defendant had not sold sufficient quantities of gasoline and oils to realize $5,000, computed as set out in the contract, it had the privilege of using the filling station for such additional time as would enable it to make the necessary sales. It had the privilege of abandoning the property at will, and it might be argued that its abandonment of the premises afforded plaintiff no ground of complaint because plaintiff had already been paid all it was entitled to or could receive under the contract.

Plaintiff alleged that it had repeatedly requested defendant to cancel the contract and that defendant had refused to do so. The fact that defendant refuses to cancel, and the further fact that it is now in court defending this suit, shows that its theory is that the contract has not expired; that it had not at the time it ceased to operate the filling station realized $5,000 from the sale of gasoline and oils as contemplated, and therefore had the privilege of using the property for an additional period of time.

While the lease contract does not so expressly provide, there is an implied obligation on the part of the defendant to occupy and use the property continuously until such time as it realized $5,000 from the sale

of gasoline and oils, if it had not realized that amount by the end of the five-year period. Certainly it was never contemplated that defendant might abandon the property at will prior to the termination of the lease and at a later date take it over again in order to sell such additional quantities of gasoline and oils as might be necessary to make up the deficiency. Therefore, if, as a matter of fact, the lease contract had not expired at the time defendant abandoned the property, its abandonment of it was an active violation of the lease. The act of abandoning the property, of vacating the premises, was a breach of the contract.

Article 1932 of the Civil Code provides that where there is an active breach of a contract no putting in default is necessary prior to the bringing of an action to cancel; and article 1933 provides that if the breach is a mere passive one a putting in default is necessary.

We think this was an active violation or breach of the contract. Article 1931 of the Civil Code says:

"A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was convenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract."

According to the petition, defendant did not merely fail, through inactivity or neglect, to live up to its implied obligation to occupy the property continuously until the expiration of the lease, but deliberately ceased operations and vacated, moved off

the property, which was an act, the doing of something inconsistent with the obligation assumed. A contract is violated actively by *doing* something. It is violated passively by "not doing what was convenanted to be done." The word "doing" as it is used in article 1931 of the Code signifies activity, and the words "not doing" signify inactivity or failure to do something.

By abandoning the property defendant did something. It acted. It took a step, made a move that was entirely inconsistent with the theory that the lease had not terminated. This was an active breach, and because it was, a putting in default was not necessary prior to the institution of the suit to cancel.

The cases cited by defendant are not in point. In Temple v. Lindsay, 182 La. 22, 161 So. 8, the defendant agreed to drill at his own expense "a test well to the depth of 3,000 feet, unless oil or gas was discovered at a less depth," and that the drilling should "continue with due and reasonable diligence until said well shall have been completed as herein stated above." Plaintiff brought suit to set aside the drilling contract on the ground that defendant "had *failed to perform* that part of his agreement which required him to continue drilling with due and reasonable diligence until the well was completed." (Italics ours.)

We found as a fact that the defendant had not abandoned the contract. We said: "There was no active breach of the drilling contract by the defendant, who from the time the well was begun in September, 1933, to July 12, 1934, was constantly making efforts to prosecute the work, and this to the knowledge of plaintiff. There were delays

from time to time due to various causes, but defendant never ceased activities."

We held that under the circumstances plaintiff had no cause of action to set aside the contract, because the defendant had not been put in default.

In Pipes v. Payne et al., 156 La. 791, 101 So. 144, another case cited by counsel for defendant, it was held, to quote paragraph 4 of the syllabus, that: "Lessor, before suing to have oil lease declared forfeited for failure to drill more wells reasonably necessary to secure oil for common advantage, should have made demand on lessee to further develop property, and should have given reasonable time within which to do so."

In this case, as in Temple v. Lindsay, the theory of plaintiff was that defendant had failed to do something necessary to be done under the contract. In each of the cases it was held that the breach alleged was passive, and that a putting in default was necessary.

Several other cases are cited by defendant, none of which supports its contention in the case at bar. They all support the general proposition that where there is a passive breach of a contract, an action to set the contract aside is premature where there is no allegation showing a putting in default.

For the reasons assigned, the judgment appealed from is reversed, the exception of no cause of action is overruled, and it is ordered that the case be remanded to the lower court, reinstated on the docket thereof in order that it may be proceeded with according to law. Appellee is to pay the costs of this appeal, all other costs to await the final decision of the case on its merits.