94 So.2d 16

Gabriel **MALLETT**

v.

**UNION OIL** and **GAS CORPORATION OF LOUISIANA** and **Humble Oil and Refining Company.**

No. 42902.

Feb. 25, 1957.

Rehearing Denied April 1, 1957.

Liskow & Lewis, Lake Charles, Tinsley Gilmer, Bernard J. Caillouet, New Orleans, for defendants-appellants.

Herschel N. Knight, Jennings, for plaintiff-appellee.

PONDER, Justice.

This is an appeal from a judgment ordering the cancellation of an oil and gas lease. The plaintiff sought in this suit the cancellation of an oil and gas lease on the ground that the primary term of the lease had terminated on April 24, 1955. The defendants answered denying that the lease had expired or terminated and averred that the lease has been maintained in full force and effect by the production on adjacent property by virtue of pooling and unitization of a portion of the land under lease with other property. Upon trial of the case, the lower court, relying on the holding in Wilcox v. Shell Oil Co., 226 La. 417, 76 So.2d 416, gave judgment ordering the cancellation of the lease and awarded attorney's fees. The defendants have appealed.

This case was tried upon an agreed stipulation of facts. The plaintiff as landowner granted a lease on 160 acres of land to S. P. Beckenstein on April 24, 1950, for a primary term of five years. Beckenstein assigned the lease to Humble Oil and Refining Company, hereinafter referred to as Humble, on June 30, 1950. Humble assigned the lease to Union Oil and Gas Corporation, hereinafter referred to as Union, on March 7, 1955. Union had previously completed a well on January 11, 1955, on a tract owned by W. J. Broussard and adjoining the plaintiff's land. In the month of March, 1955, Humble sought to get an extension of the lease from the plaintiff which was refused. Three days prior, on April 21, 1955, to the expiration of the lease Union filed for record a declaration of unitization covering some 159.9 acres, 53.3 acres of which was the property of the plaintiff and the remaining acreage was the Broussard property. It is to be noted that the Broussard well had been producing gas since January 11, 1955 and it was unitized with the plaintiff's property three days before the expiration of the lease after the plaintiff had refused to extend the lease. The plaintiff demanded the cancellation of the lease which was refused by the defendants. The plaintiff then instituted the present proceedings under the provisions of LSA–R.S. 30:102 seeking the cancellation of the lease and an award of $2,500 attorney's fees.

The question presented for our determination is whether Union could under the terms of the plaintiff's, Mallett's, lease create a unit by pooling and unitizing plaintiff's land with the Broussard land upon which a producing well was located and thereby extend plaintiff's lease beyond its primary term.

The trial judge was of the opinion, as reflected by his written reasons for judgment, that the provisions of the lease involved herein were so similar to the provisions in the lease involved in the Wilcox v. Shell Oil case, supra, that that decision was controlling.

■ In the Wilcox case this Court held that under the terms of the lease involved therein that the lessee could not extend the lease by pooling the leased lands with lands already under production for the reason that the language embodied in the lease contemplated pooling before development. Every lease contract must be governed by its own terms because it is the law between the parties.

■■ Under the terms of the lease involved in this case, the lessee is granted the right to go upon the property of the plaintiff to investigate, explore, prospect, drill, and mine for minerals. In other words, the lessee is granted the right to go upon the property and develop it in order to secure minerals. The purpose of the lease being such, any pooling agreement provided for therein must be considered as incidental to and an aid in carrying out that purpose unless there is clear and unmistakable language contained therein to the contrary. In other words, if the right to pool with producing property is given it must be specifically set out in the lease and cannot be eked out by innuendo. The contract must be construed against the lessee for he either prepares the lease or furnishes the prepared form.

The provisions contained in this lease relating to pooling are as follows (Paragraph 4 of the lease in question) :

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease, or any portion thereof as to oil and gas, or either of them, with other land, lease or leases in the immediate vicinity thereof to the extent, hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said leased premises in compliance with the orders, rules and regulations of State and Federal governmental authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas from said premises. Units pooled for oil hereunder shall not substantially exceed 40 acres each in acre, and units pooled for gas hereunder shall not substantially exceed in area 160 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, units thereafter created may conform substantially in size with those prescribed by governmental regulations. Lessee under the provisions hereof may pool

or combine acreage covered by this lease, or any portion thereof as above provided as to oil in any one or more strata and as to gas in any one or more strata. The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the lease is pooled or combined as to any other stratum or strata, and oil units need not conform as to area with gas units. The pooling in one or more instance shall not exhaust the rights of the Lessee hereunder to pool this lease or portions thereof into other units. Lessee shall execute in writing and record in the Conveyance Records of the Parish in which the land herein leased is situated an instrument or instruments identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated for all purposes except the payment of royalties as if it were included in this lease, and drilling or reworking operations thereon and production of oil and gas, or either of them, from any stratum or strata so pooled shall be considered for all purposes except the payment of royalties as if the operations were on and production were from the land covered by this lease, whether or not the well or wells be located on the premises covered by this lease. In lieu of the royaties elsewhere herein speci-

fied, Lessor shall receive, on pooled production from a stratum or strata unitized under the provisions hereof, only such portion of the royalties stipulated herein as the amount of the acreage (surface acres) covered by this lease and included in the unit as to the unitized stratum or strata, or Lessor royalty interest therein on an acreage basis, bears to the total acreage (surface acres) so pooled in the particular unit involved; provided, however, no reduction of shut-in gas royalties shall be made under this provision. The production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit."

It appears throughout the lease that it contemplates the development of the property by drilling thereon and we find throughout the lease references made to the drilling or reworking operations; production of oil and gas; and commencing drilling operations. In paragraph 4 we find this language, after reference is made to the right to pool, viz.: "when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said leased premises." In the same para-

graph of the lease it is to be noted that the phrase "drilling or reworking operations thereon and production" are used.

In paragraph 5 this language is used: "If operations for drilling are not commenced on the land covered hereby or on land with which land covered hereby is pooled hereunder, as above provided."

In paragraph 6 we find this language, "this lease shall not terminate if Lessee commences or resumes the payment or tender of rentals, or commences drilling operations or reworking operations."

In paragraph 9 we find this language: "After the production of oil, gas, sulphur or other mineral has been secured from the land covered hereby or land pooled therewith."

In paragraph 11 we find, viz.: "Should Lessee be prevented from complying with any express or implied covenant of this lease from conducting drilling or reworking operations," etc.

■ The language used in this lease unmistakably shows that the pooling agreement was authorized only for the purpose of development and the right to unitize with producing property was not granted. The whole tenor of the lease and the pooling agreement contemplates pooling before production.

■ The defendant states in his assignment of error that the court erred in award-

ing attorney's fees. However, this point was not argued or briefed. It is stipulated in the record that should the plaintiff be entitled to recover attorney's fees that the amount awarded was reasonable. Under LSA–R.S. 30:102 the plaintiff is entitled to recover reasonable attorney's fees when the lessee refuses to cancel a lapsed lease upon demand.

For the reasons assigned, the judgment of the lower court is affirmed at appellants' cost.

SIMON, J., concurs in the decree.

McCALEB, Justice (dissenting).

I cannot agree that the provisions of the lease in this case are substantially the same as those in Wilcox v. Shell Oil Company, 226 La. 417, 76 So.2d 416, or that the language embodied in the lease authorizes the conclusion that the right given to the lessee to unitize must be exercised before the commencement of drilling and production from the unit.

As I see it, the only paragraph of the lease having any bearing on the right of the lessee to unitize is paragraph 4, which plainly confers upon the lessee the right to create the unitized area "at its option". There is nothing in that paragraph, or in any other part of the lease for that matter, which either directly or by innuendo makes the right to pool the acreage conditioned

upon the establishment of the unit prior to development. On the contrary, paragraph 4 expressly stipulates that it may be done "when in Lessee's judgment it is necessary or advisable to do so in order properly to develop and operate said leased premises in compliance with orders, rules and regulations of State and Federal governmental authority, *or when to do so would, in the judgment of Lessee, promote the conservation of oil and gas from said premises"*. (Italics mine.)

The clause in paragraph 4 of the lease, relied on by counsel for lessor as exhibiting that the unit must be created before drilling and production does not, in my opinion, sustain this position. That provision reads:

"The entire acreage so pooled into a tract or unit shall be treated for all purposes except the payment of royalties as if it were included in this lease, and drilling or reworking operations thereon *and* production of oil and gas, or either of them, from any stratum or strata so pooled shall be considered for all purposes except the payment of royalties as if the operations were on and production were from the land covered by this lease whether or not the well or wells be located on premises covered by this lease."

Counsel points to the conjunction "and", which I have above italicized, and argues that drilling *and* production is essential in order for the unitization of the leased prop-

erty to become effective. This is true but *it does not restrict in any manner the time when the unit may be formed or warrant the conclusion that unitization must take place prior to drilling and production.*

I respectfully dissent.