PONDER, Justice.
The plaintiffs brought this suit for the cancellation of an oil and gas sub-lease covering 140 acres located in Section 18, Township 21, Range 15 West, in Caddo Parish, alleging that the ten shallow wells located thereon were not producing in commercial quantities, for damages for certain equipment alleged to have been removed from the premises, and for attorney’s fees. The defendant denied that the wells were not producing in commercial quantities and reconvened and asked for judgment against the plaintiffs in the sum of $2,481.05, representing sums of money collected by plaintiffs for oil produced from these wells and which plaintiffs refused to turn over to defendant. It appears that in fact the defendant, during the course of the trial, abandoned any claim to six of the wells and after trial the lower court gave judgment in favor of the plaintiffs cancelling the sublease except as to five acres around each of four producing wells, awarded damages in the amount of $82 and refused the demand for attorney’s fees. At the same time, the lower court gave judgment in favor of defendant on its reconventional demand for $2,481.05. The plaintiffs have appealed asking for a cancellation of the entire lease, for damages in the amount of $6,100 and for attorney’s fees in the sum of $2,000. The defendant did not answer the appeal and the only questions presented for our determination is whether or not the four wells are producing in commercial quantities, the claim for damages, and attorney’s fees.
Sometime in the year 1937, the Standard Oil Company granted a mineral lease on the 140 acres of land located in Caddo Parish to A. R. Hancock and Roy Uhlman. The lease applied only to the depth and through the Woodbine sand. The lessor reserved the right to explore for minerals below that area. The lease was for a primary term of four months and as long thereafter as minerals were produced from the lands. The lessor (a) was to receive a royalty of %th of the minerals produced provided the average production per well should exceed 25 barrels per day for a period of 30 days, this overriding royalty would he %e of %ths during the period that the wells made such average; (b) on gas including casing-head gas, etc., %th of the market value at the well; and (c) Ygth of the market value of all other minerals.
Sometime thereafter, the lessee subleased the property to George J. J. Clark. This lease is not in the record and we are not informed as to the exact terms contained in this sub-lease. Clark on July 18, 1950, sub-leased the property to the defendant herein, Shallow Oil Company, Incorporated, in consideration of the sum of $50 in cash and other valuable consideration, retaining and reserving unto himself an overriding royalty of Ysz of %ths of the minerals saved and marketed from the ten shallow wells located on the property. The defendant herein obligated itself to pay the balance due on a $15,000 obligation in favor of Gladys Hancock. The sub-lease covered only the formations lying above base of chalk located at a depth of approximately 1,700 feet. It was provided in this sublease that all the equipment located on the premises should remain the property of Clark and that it could not be removed from the premises without his consent. The sublease provided that it should remain in effect as to the ten wells and five acres in the form of a square around each of said wells for a period of 2 years and as long thereafter as each of the wells produced minerals in commercial quantities.
The defendant went into possession of the property and has been operating under the sub-lease since 1950.
*675 During the latter part of 1955, Clark transferred all of his title and interest in his sub-lease to the plaintiffs herein, including all right of action for damages and cancellation of the defendant’s sub-lease for a consideration of $10 and other valuable consideration. The other valuable consideration, according to the testimony of one of the plaintiffs, was approximately $5,-000. The plaintiffs brought the present suit to have the defendant’s sub-lease cancelled on the ground that it was not producing in commercial quantities. This suit was brought within 60 days of the plaintiffs’ acquisition of Clark’s sub-lease. It is stipulated in the record that the lease is paying in commercial quantities to the landowner, lessor, and the defendant, sub-lessee. The plaintiffs’ interest in the oil produced from these wells is an overriding royalty of %2 of piths or .0273440.
We are at a loss to see how plaintiffs, after stipulating with the defendant that the four wells are producing in commercial quantities as to the lessor and operating sub-lessee, can contend that the wells are not producing in commercial quantities. Certainly this production could not be governed by the amount received for the small overriding royalty. The plaintiffs seem to think that the consideration that they paid for the sub-lease and overriding royalty, and the expenses incurred by them such as book-keeping, taxes, and depreciation, should be the determining factor oí whether or not these wells are producing in commercial quantities.
We cannot accept this contention because the plaintiffs knew what these wells were producing [oil comparable to the shallow wells in that vicinity] at the time they acquired the sub-lease from Clark and the fact that they might have paid more than that sub-lease and small royalty was worth is of no moment. If it were otherwise, the rights of the lessor and the operating sub-lessee could be easily destroyed. It is not contended that the defendant has failed to comply with its obligations set forth in its sub-lease.
As to the plaintiffs’ claim for damages for alleged removal of certain equipment from the premises, we agree with the trial judge that they are entitled to recover only the sum of $82 because the evidence does not show what equipment was on the leased premises at the time the defendant went into possession of the property and what equipment is presently located thereon except an engine sold by the defendant for $22 and some junk pipe sold for $60.
The lower court properly denied the plaintiffs’ claim for attorney’s fees in this case. The plaintiffs rely on Wier v. Grubb, 228 La. 254, 82 So.2d 1; Nunley v. Shell Oil Company, 229 La. 349, 86 So.2d 62 and R.S. 30:102.
LSA-R.S. 30:102 in regard to attorney’s fees provides: “If a lessee, having been given written notice demanding cancellation of the lease, fails or refuses to comply within ten days, he shall be liable to the lessor for a reasonable attorney’s fee incurred by the lessor in bringing suit to have the cancellation adjudged.”
Although the record does not show that any written demand was made on the defendant for the cancellation of its sublease, if such demand was made it was for the cancellation of the entire lease. If we concede therefore that a demand was made before the filing of this suit, it must have been for the cancellation of the entire sublease. It is true that attorney’s fees were allowed in the case of Nunley v. Shell Oil Company, supra, but an examination of that case reveals that only partial cancellation was sought and granted. This is also true of Wier v. Grubb, supra. Herein plaintiffs sought entire cancellation and were only successful in partial cancellation hence the claim for attorney’s fees was properly rejected.
The trial judge cast the defendant with costs in this suit. Under the circumstances in this case, we think the costs *676 should be divided equally between the plaintiffs and defendant.
For the reasons assigned, the judgment of the lower court is amended so as to assess costs to be paid one-half by the plaintiffs and one-half by the defendant, and as thus amended the judgment is affirmed.