130 So.2d 501 (1961)
W. Frank BAILEY et al., Plaintiffs-Appellants,
v.
Herman C. MEADOWS et al., Defendants-Appellees.
No. 9502.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1961.
Rehearing Denied June 1, 1961.
Certiorari Denied June 29, 1961.
*502 Pipes & Pipes, Monroe, for appellants.
Goff & Caskey, Arcadia, for Herman C. Meadows.
Barham, Wright & Barham, Ruston, for Floyd B. James.
Stephens & Allen, Shreveport, for M. E. Pollard.
Simon Herold, Shreveport, for Virginia Brinkmann and R. R. Brinkmann, Jr.
Before HARDY, AYRES and BOLIN, JJ.
BOLIN, Judge.
The primary objects sought by plaintiffs in the lower court were: (1) the cancellation of certain mineral leases originally taken by defendant, Herman C. Meadows, on lands owned in indivision by plaintiffs and their mother (she having died intestate after the execution of the leases and before the institution of this suit), and for attorney's fees; (2) the issuance of an order for an accounting by Southern Natural Gas Company with respect to a pro rata share of funds from the accrued production of gas and distillate from a portion of the leased lands; (3) the issuance of an order requiring Southern Natural Gas Company to deposit these funds in the registry of the district court; (4) and a judgment ordering a proper disbursement of these funds. The orders referred to in clauses (2) and (3), supra, were issued by the district court on November 25, 1957, and May 2, 1958, respectively, and Southern Natural Gas Company has complied therewith and was still complying therewith at the time *503 of trial. Therefore, these issues are not presented on appeal.
By means of five separate instruments dated April 16, 1954, Mrs. J. L. Bailey, W. Frank Bailey, Irma Bailey Shields and Irene B. Posey granted oil and gas leases to Herman C. Meadows on 120 acres of land located in Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana. All five of these leases were for a term of one year with no provision for deferment of the termination by payment of delay rentals. After his acquisition of these leases, and on the same day, Meadows sold a small overriding royalty interest in all of the leased lands to Floyd B. James, another defendant herein. This instrument was not filed until May 25, 1955.
Mrs. J. L. Bailey, widow of J. L. Bailey, died intestate in May, 1954, leaving as her sole and only heirs three children, plaintiffs herein, who inherited her estate in indivision and in equal portions. Plaintiffs had previously acquired by inheritance from their father, J. L. Bailey, who died about 1936, his undivided one-half interest in the property, subject to the usufruct of their mother.
On June 25, 1954, Meadows sold an undivided one-half interest under one of the leases to R. R. Brinkmann, subject to a proportionate share of the overriding royalty previously sold to Floyd B. James. Although the instrument in question recited that the overriding royalty was in favor of "T. L. James and Company and Mrs. V. A. Davidson," the royalty instrument itself shows this was an error and the royalty was actually in favor of Floyd B. James. This instrument was not filed until April 30, 1957. R. R. Brinkmann died in November, 1954, and his widow in community and heirs were therefore made parties defendant in this suit.
On March 31, 1955, approximately two weeks before the five leases were to expire by their own terms, the Louisiana Department of Conservation issued Order No. 78-F, adding the productive portion of the Pettit Formation located in Section 35, Township 17 North, Range 6 West, to an existing unit of 640 acres located in Section 2, Township 16 North, Range 6 West. This addition included portions of the acreage leased by plaintiffs and their mother to Meadows. On July 26, 1955, the Department of Conservation amended its order No. 78-F by adopting a surveyed plat of the additional acreage. This plat designated 45 acres of the 120 acres as a part of the producing unit.
On March 14, 1956, or almost a year after this unitization, Meadows sold his remaining undivided one-half interest in certain leases to M. E. Pollard, another defendant herein. This sale and assignment contained a reversionary clause providing that an undivided one-eighth of seven-eighths interest in these three leases would "automatically" revert to Meadows after Pollard had recovered from the oil, gas and minerals sold from the leased lands the sum of $2,400, plus any amount he might be required to expend in paying his pro rata portion of the operating costs occasioned by Department of Conservation Order No. 78-F. It further provided that the interest conveyed to Pollard and the interest to be reconveyed by him to Meadows were to be subject to their pro rata portion of the overriding royalty previously sold to Floyd B. James. This instrument was filed May 17, 1956.
One of the plaintiffs, Mrs. Irene B. Posey, after the execution of the leases hereinabove described, sold an undivided mineral interest to J. E. McAneny.
The producing unit into which portions of the leased lands were unitized, the T. A. Loe et al. Unit No. 1, has produced gas and distillate continually since April 1, 1955, the date from which the additional areas added to the unit are entitled to participate in production. Southern Natural Gas Company is the operator of the unit, but none *504 of the defendants have sold or assigned any interest in the leases to this corporation.
As of March 8, 1957, none of the plaintiffs had been tendered or had received any money as royalties, despite the fact that production had been accruing from portions of the leased lands for almost two years. Moreover, during the period from April 1, 1955, to March 8, 1957, it is alleged plaintiff W. Frank Bailey had made several telephone calls to defendant Herman C. Meadows concerning the royalties due under the leases.
On March 8, 1957, plaintiff W. Frank Bailey wrote Herman C. Meadows (who was then the record owner of at least a one-half interest in the leases), and M. E. Pollard demanding cancellation of the leases on his property under LSA-R.S. 30:102. On March 14, 1957, Stephens & Allen, Attorneys, acknowledged receipt of this letter on behalf of Meadows and Pollard, stating that they were requesting Southern Natural Gas Company to pay Mr. Bailey his royalties, and that, should this Company fail to do so, Meadows and Pollard would pay same.
Shortly after May 1, 1957, each of the plaintiffs received two checks purportedly covering the royalties due them through March 31, 1957. These checks were drawn on the Estate of R. R. Brinkmann and Stephens & Allen, attorneys for M. E. Pollard. They were forwarded to plaintiffs with a cover letter from Stephens & Allen.
On June 4, 1957, two letters written by the attorneys for plaintiffs were mailed to Herman C. Meadows and duly received by him. Copies of each of these letters were also mailed to M. E. Pollard and the Estate of R. R. Brinkmann, via Stephens & Allen, Attorneys, and duly received by them. Enclosed were the checks previously sent by Stephens & Allen, together with a formal demand for the cancellation of the five leases in question. The defendants did not reply to any of these letters nor were the cancellations made as requested, and, therefore, this suit was filed in October, 1957 Defendants released all of the acreage covered by the leases except the 45 acres placed in the unit by order of the Conservation Department. Over objection of plaintiffs, these releases were filed in evidence during the trial.
The lower court rendered judgment in favor of defendants and thereby rejected plaintiffs' demands for a cancellation of the leases and attorneys' fees, and relegated them to the funds deposited in the registry of the court for the accrued royalties due them under the leases, ordering that costs be paid from such funds and taxing same against all parties according to their pro rata interest in such funds. From this judgment, the plaintiffs have appealed.
As to the acreage not in the unit, the appellants contend the lower court should have adjudged the cancellation rather than allow the releases to be filed during the trial. The procedure followed accomplished the same results but adversely affected their demands for attorney's fees and costs.
The principal issue presented on appeal relates to the lower court's refusal to cancel the leases as they affected the 45 acres in the unit for non-payment of production royalties for a period of approximately 18 months. The appellees give as their excuse for such delay the negotiations they were having with Southern Natural Gas Company, as the operator of the unit. The only evidence relative to these negotiations was the testimony of some of the appellees. They contend it was necessary for them to reach an agreement with the operator relative to the payment of their pro rata part of the cost of production. A dispute arose as to whether this cost should be pro rated on the basis of the original cost of drilling such a well or whether same should be calculated on a depreciated basis in relation to the length of time the added acreage had been in the unit. It was their testimony that such negotiations lasted for an extended period *505 of time and they, therefore, did not receive any production royalties from the operator until the matter was finally resolved in their favor. Because of their inability to reach an agreement with the operator, they contend they did not receive a statement as to any amounts due under the acreage and therefore could not compute the amount of royalties due the plaintiffs.
The reasons for the delay, as given by the appellees, do not favorably impress us. The appellants, as lessors, were not a party to any of these negotiations between the appellees and the operator. Regardless of the final outcome of such negotiations, the amount due the appellants would be the same. The negotiations in question were being held exclusively for the benefit of the appellees, as lessees, and the Southern Natural Gas Company, as the operator. In other words, when the acreage was placed in the unit by the order of the Conservation Department, the status of the appellants, as lessors under the original oil and gas leases, did not change. Neither was the status of the appellees as lessees altered, except they were relieved of the obligation to drill a well in order to secure production, because this was obtained by including the acreage within the existing production unit. Under these circumstances, the lessees were required to negotiate with Southern Natural Gas Company as to the payment of their pro rata part of the drilling of the original well. Until such an agreement was consummated, we must assume the seven-eighths interest in the production which would ordinarily have been paid to the appellees would be withheld by the operator. But to say the appellees could withhold payment of the royalties due the appellants until such negotiations were made to their satisfaction, would be equivalent to saying the lessees were not obligated to pay the lessors any royalties until they were paid their portion.
If the negotiations in question made it impossible for them to pay that portion of the production due the appellants as the lessors, we feel the burden was upon the appellees to so show. In this connection, we do not feel the evidence was either definite or conclusive. To the contrary, we must assume the operator kept accurate monthly records of the production from the acreage in question, together with the amount received for its sale. Under these circumstances, it would have been a simple matter to have ascertained the amount due the appellants. The appellees owed an obligation to pay the production royalties due the lessors monthly if such an amount could be ascertained. We have concluded this record does not show how the negotiations between the appellees and the operator could have in any way affected the amount due the appellants.
The appellees additionally contend that if it be conceded there was no legal justification for the refusal to pay royalties, it was necessary to put them in formal default before an action could be instituted for cancellation of the leases. In this connection, the record reflects the leases under consideration are the usual commercial type with no fixed time for the payment of production royalties and no specific provision for the cancellation of same for the failure to pay royalties. Of course, interrelated to the basic question of default is the subsidiary issue of whether the breach involved herein was "passive" or "active".
A study of the numerous oil and gas cases dealing with the dissolution or cancellation of leases for non-development show the relation between the LSA-Civil Code articles on default with those on dissolution or cancellation. The case of Temple v. Lindsay, 1935, 182 La. 22, 161 So. 8, 12, held the owner of an oil and gas lease could not sue for the dissolution of a contract under which the defendant agreed to drill an oil well "with due and reasonable diligence" without first putting the defendant in default. The contract in that case, as in this case, specified no term for the performance of the obligation.
*506 The Supreme Court, in the case of Pipes v. Payne, 1924, 156 La. 791, 101 So. 144, held that the lessor, before suing to have an oil lease forfeited for failure to drill additional wells, should have made demand on lessee to further develop the property; and should have given a reasonable time within which to act; and that a petition to forfeit an oil lease for failure to further develop land did not disclose a cause of action in the absence of an allegation of formal default. This case held such a demand for further development was necessary under Article 1912 of the LSA-Civil Code, although a demand was made for cancellation under Act 168 of 1920.
We have been cited to numerous other cases wherein the cancellation of a lease was sought because of failure to adequately develop the property. In all such cases, the courts have generally held that a default is a condition precedent to such an action. Appellees argue it logically follows that a default is a prerequisite to a cancellation of of a lease for failure to pay accrued production royalties.
Essentially ours is the problem of determining whether the breach involved herein was an active or passive breach. In this regard, we note the following articles of our LSA-Civil Code:
Article 1931.
"A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract."
Article 1932.
"When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action."
There have been numerous cases interpreting the above codal articles and particularly as they relate to oil and gas leases. All of such decisions culminated in the landmark cases of Melancon v. Texas Company, 1956, 230 La. 593, 89 So.2d 135, and Bollinger v. Texas Company, 1957, 232 La. 637, 95 So.2d 132. In the Melancon case, cancellation of a lease was awarded to lessor because of failure of lessee to pay production royalties for a period of fifteen months. After reviewing numerous cases to the effect that lessor's royalty under the usual oil and gas lease is placed in the rent category, and that in construing mineral leases the codal provisions applicable to ordinary leases must be applied, the Supreme Court stated [230 La. 593, 89 So.2d 142]:
"In the system of interpretation of oil and gas contracts which this Court has followed for many years, the lessor's royalty under the usual oil and gas lease is placed in the rent category. Such a characterization is well fixed in our law (see Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679, containing a summary and analysis of pertinent cases), and has given little trouble since this Court's pronouncement of more than three decades past that * * * `a mine or quarry, or land adapted to mining or quarrying, may be leased for a certain portion of the produce of such mine or quarry, and the fact that such portion is called "royalty," instead of rent, is not of the least consequence.' Logan v. State Gravel Co., 158 La. 105, 109, 103 So. 526, 527. The rule is equally well established that in construing mineral leases, `* * * the codal provisions applicable to ordinary leases must be applied.' Coyle v. North American Oil Consolidated, 201 La. 99, 114, 9 So.2d 473, 478; Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336.
* * * * * *

*507 "In the case of royalty based on gas and oil production it is the accepted custom, as reflected by this very record, to make such payments on a monthly basis, computed on the amount of gas and oil sold or run into the line from the well. A justifiable cause for delay in such payments might arise when there is a reasonable dispute as to those entitled to receive the royalties, or the amount due each, but no such factual situation is here presented, and we agree with the trial judge that a delay of fifteen months for no valid reason is unjustifiable and violative of the terms of the contract.

* * * * * *

"Defendant's contention that there was no `formal demand,' that such demand is a necessary preliminary to a refusal to pay, and that in its absence the forfeiture would not be warranted, is not persuasive in the face of the finding of the trial judge, and of our confirmation of his finding, of the defendant's active violation of its obligations under the lease. LSA-Civil Code, Article 1932; Rosenthral v. Baer, 18 La.Ann. 573; Noel Estate, Inc. v. Louisiana Oil Ref. Corp., 188 La. 45, 175 So. 744. But if it were necessary to place the defendant in default because of the fact that the exact time for payment of royalties was not fixed in the subject contract, we are not unmindful of the provisions of the Civil Code that placing a debtor in default may be accomplished verbally, in the presence of two witnesses, Article 1911, and the record, we think, clearly supports the trial judge's finding that the plaintiff asked for payment of production royalties at least three times, at meetings attended by others and in their presence." (Emphasis supplied by this Court.)
In the companion case of Bollinger v. Texas Company, supra, cancellation of a lease was granted to a lessor, whose property was located in the same unit as that of Melancon, on the ground that, although plaintiff was paid a sum for "shut-in" royalties in excess of the amount due as production royalties, the lessee should have paid the correct amount due as production royalty. We feel the following language from that case is applicable to the instant case [232 La. 637, 95 So.2d 136]:
"Plaintiff urges that it is not the amount of the royalties which is determinative of the right of cancellation and forfeiture, but that it is the failure on the part of the Lessee to pay any amount of production royalties without a proper excuse for such non-payment.

"In the Melancon case, supra, we held that the codal provisions which apply to ordinary leases are also applicable to mineral leases; and that in the case of royalty based on gas and oil production, it is the accepted custom to make such payments on a monthly basis, computed on the amount of gas and oil sold or run into the line from the well. We further stated that a justifiable cause might exist for delay in such payment, when there is a reasonable dispute as to those entitled to receive the royalties. In the instant case, the record discloses that there was no dispute as to those to whom royalties were due.

* * * * * *

"A Lessee must comply with his lease terms. Whether production payments are larger or smaller than `shut-in' payments, they must be paid on accurate computations and as such. Plaintiff had the right to be paid in accordance with the method provided by the terms of the leasenot at the whim or caprice of the defendant. Where the whim of defendant could or might effect a Lessor's rights under a lease, courts should always (as we are doing here) intervene *508 to protect those rights." (Emphasis partially supplied by this Court.)
Appellees contend the Melancon and Bollinger cases are clearly distinguishable from the instant case on the facts and the language used. We must confess the court said in the Melancon case that the facts therein justified finding a formal demand had been made "if it were necessary", but this was pure surplusage and dictum. We are also mindful that the court found the refusal to pay the royalties in the Melancon case was a part of an apparent scheme to pressure or force the lessors into signing a unitization agreement. However, such a finding by the court did not alter the clear and unmistakable principles of law enunciated in its opinion, from which we have extensively quoted.
We are, therefore, of the opinion that the Melancon and Bollinger cases have enunciated a general rule that failure to pay production royalties under an oil and gas lease, for any appreciable length of time, without justification, amounts to an active breach of such lease which entitles the lessor to a cancellation thereof without the necessity of placing the lessee in formal default. Applying this principle of law to the instant case, we are relegated to deciding whether this record reflects any justification for the appellees' refusal to pay the royalties for a period of approximately 18 months. Having found no such justification, we are of the opinion that the lower court was in error in rejecting the demands for cancellation of the leases.
The lower court also rejected the demands for attorneys' fees for the cancellation of the leases voluntarily released by instruments which were filed during the trial; said releases being executed and filed subsequent to the institution of the suit for cancellation. Under the judgment as rendered, the refusal to allow attorneys' fees was justified under the holding of Leaderbrand and Hardy v. Shallow Oil Company, 1958, 234 La. 796, 101 So.2d 673, that defendants are not liable for attorneys' fees incurred by lessors in bringing suit for an entire cancellation where the judgment is only for a partial cancellation. However, where a suit is instituted for a partial or entire cancellation of oil and gas lease which results in a judgment for the relief prayed for, such judgment may include an award for attorneys' fees where there is sufficient evidence to establish the reasonable value of legal services rendered. Mallett v. Union Oil and Gas Corporation, 1957, 232 La. 157, 94 So.2d 16; Nunley v. Shell Oil Company, 1956, 229 La. 349, 86 So.2d 62; Wier v. Grubb, 1955, 228 La. 254, 82 So.2d 1.
However, where the evidence as to the value of the legal services is unsatisfactory or inconclusive, the courts have dismissed such demands as of non-suit. Melancon v. Texas Company, supra. The only evidence in the instant case as to attorneys' fees was relative to an agreement between the appellants and their counsel for representation on a contingent fee basis. Under such an agreement, appellants have calculated that their attorney should be due approximately $3,000 for which they seek a judgment. We do not feel this is sufficient evidence of the value of such services rendered, and this portion of the appellants' demands will be rejected as of non-suit.
For the reasons stated herein, the judgment of the lower court is reversed and set aside, and it is now accordingly:
Ordered, adjudged and decreed that there be judgment herein in favor of W. Frank Bailey, Irma Bailey Shields and Irene B. Posey, and against the defendants, Herman C. Meadows, Floyd B. James, M. E. Pollard, Virginia H. Brinkmann, Reginald Brinkmann, Jr., and Virginia H. Brinkmann, as tutrix of the minor, John H. Brinkmann, ordering the cancellation of the following oil, gas and mineral leases:
*509 1. An oil, gas and mineral lease dated April 16, 1954, by Mrs. J. L. Bailey widow of J. L. Bailey, granted unto Herman C. Meadows on the North Half of the Southwest Quarter, Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana, and recorded in Conveyance Book 203, page 132;
2. An oil, gas and mineral lease dated April 16, 1954, by Mrs. J. L. Bailey, widow of J. L. Bailey, granted unto Herman C. Meadows on the Southeast Quarter of the Northwest Quarter, Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana, and recorded in Conveyance Book 203, page 133;
3. An oil, gas and mineral lease dated April 16, 1954, by W. Frank Bailey, and Irma Bailey Shields granted unto Herman C. Meadows on the Southeast Quarter of the Northwest Quarter, Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana, and recorded in Conveyance Book 203, page 134;
4. An oil, gas and mineral lease dated April 16, 1954, by W. Frank Bailey and Irma Bailey Shields granted unto Herman C. Meadows on the North Half of the Southwest Quarter, Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana, and recorded in Conveyance Book 203, page 135;
5. An oil, gas and mineral lease dated April 16, 1954, by Irene B. Posey granted unto Herman C. Meadows on the North Half of the Southwest Quarter and the Southeast Quarter of the Northwest Quarter, all in Section 35, Township 17 North, Range 6 West, Bienville Parish, Louisiana, recorded in Conveyance Book 203 at page 138.
It is further ordered, adjudged and decreed that the production payments presently on deposit in the Clerk of Court's office of Bienville Parish, Louisiana, which have been so deposited by Southern Natural Gas Company pursuant to the orders of the district court, and which have accrued should be paid to the following parties, and in the following proportions:
(1) To plaintiff W. Frank Baileyone-third of all production payments accruing since April 1, 1955;
(2) Irma Bailey Shieldsone-third of all production payments accruing since April 1, 1955;
(3) Irene B. Poseyone-forty-eighth of all production payments accruing since April 1, 1955;
(4) J. E. McAnenyfifteen-forty-eighths of all production payments accruing since April 1, 1955.
It is further ordered, adjudged and decreed that the demands for attorneys' fees be rejected as of non-suit;
It is further ordered, adjudged and decreed that Southern Natural Gas Company be, and it is, hereby relieved from the obligation of further depositing the royalties due under the subject leases into the registry of the court.
It is further ordered, adjudged and decreed that the defendants-appellees pay all cost of these proceedings in the lower court and on appeal.
Reversed and rendered.