BOLIN, Judge.
Herbert Baker and Gertrude Baker Paynter seek to be recognized as owners of one-half the mineral interest in and under a 60-acre tract located in Lincoln Parish, Louisiana, previously sold by them to John and James Hinton on March 29, 1956.
In their deed to the Hintons the vendors reserved one-half the minerals which they subsequently leased to Wheless Oil Company. The Bakers claim the mineral servitude was kept alive beyond the 10-year prescriptive period because, prior to March 29, 1966, the 60-acre tract was voluntarily unitized and pooled with other lands upon which a producing gas well was located. In the alternative, plaintiffs ask for $15,-000 as damages. Made defendants were Chevron Oil Company, James and John Hinton and Hinton Feed and Seed Store, Inc., the latter company having acquired an interest in the property. Defendants filed an exception of prescription liberandi causa on account of non-user for ten years. This exception was sustained and plaintiffs appeal.
In November, 1965, Wheless Oil Company started drilling operations on another *459 tract, located in the same section as the above-described property. Wheless drilled to a depth of 9,000 feet but without securing production. Subsequently, Wheless turned operations over to Chevron Oil Company which brought in a gas well on January 6, 1966.
Prior to actual production it was necessary for Chevron to form a production unit, in conformity with Statewide Order 29-E of the Department of Conservation of the State of Louisiana; to install flow lines; and to secure an allowable from the Conservation Department. Chevron’s Drilling Program Committee determined that all of Section 4, Township 18 North, Range 1 West, Lincoln Parish, Louisiana, should be included in the unit. It then proceeded to seek agreement of the lessees to the formation of this unit and drew up multiple originals of a Declaration of Pooling and Unitization agreement, dated March 4, 1966, which were mailed to the other lessees, including Tenneco Oil Company, Southern Natural Gas Company and Wheless Drilling Company. These companies, as well as Chevron, were authorized by their respective leases to form a voluntary pooling agreement without consent of the lessors. However, one acre, necessary to completion of the unit, was under lease from the Lincoln Parish School Board and this lease contained no voluntary pooling agreement. As a consequence, it was necessary for the school board to advertise, obtain bids and, with the consent of the members of the board, to agree to the pooling of its interest with those of the other lessees. Following this, the approval of the State Mineral Board was obtained and the pooling agreement was signed by the school board on March 4, 1966, and by Wheless on March 8, 1966.
During the course of these preliminary arrangements it appeared doubtful the uni-tization could be effectuated prior to expiration of the Bakers’ lease. Chevron, in order to protect itself, obtained a lease from the Hintons covering the 60-acre tract, which lease was to start March 29, 1966. Tenneco Oil Company signed the pooling agreement April 25, 1966, and it was acknowledged by Chevron Oil on May 9, 1966. Southern Natural Gas Company signed and acknowledged the agreement April 14, 1966, and this declaration was likewise acknowledged by Chevron on May 9, 1966. Following signing and acknowledgment of all the Declarations of Pooling and Unitization, executed in counterparts, the agreements were filed in the conveyance records of Lincoln Parish, Louisiana, on May 12, 1966, and production was commenced.
Since the well was on property other than on the property in which plaintiffs claim a mineral interest, unitization must have been completed prior to March 29, 1966, in order to extend the mineral rights beyond the 10-year period for prescription. See Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50 (1956). Thus it becomes necessary to determine when the unitization became effective.
Appellants argue, since Chevron Oil Company had the controlling interest in the well in question after December 29, 1965, and its officials admitted they were certain the other companies would agree to the pooling agreement, that the effective date of the unitization was March 4, 1966, the date on which the declarations were drawn up. In brief before this court it is stated categorically that the instrument was “executed” on March 4, 1966. Alternatively, appellants have urged they are entitled to $15,000 damages from Chevron because of that company’s failure to procure the signatures expeditiously in order to protect the mineral rights of plaintiffs and prevent the loss of such rights by prescription on March 29,1966.
Contrary to plaintiff’s first contention appellees point out that, although the declarations were prepared in Chevron’s office and dated March 4, the signatures of Tenneco and Southern Natural were not affixed until April. In the answers to “Request for Admissions” propounded by *460 Chevron appellants specifically admit the pooling agreement was not signed by Southern Natural until April 14, 1966, and by Tenneco until April 25, 1966, some two or three weeks after the March 29th expiration date of plaintiffs’ mineral reservation.
Each counterpart of the original declaration contained the following condition pertinent to the present issue:
“This agreement may be executed by signing this instrument or any counterpart of this instrument, all of which shall be treated as originals and one agreement.” (Emphasis added)
A similar condition, contained in the agreement signed by the school board, provided :
“3. This agreement shall be effective as of the date the aforesaid Declaration of Pooling and Unitization establishing a unit identical with that described herein is filed for record.” (Emphasis added)
We have examined the authorities cited by appellants in support of their contention the unitization was effective on March 4, 1966. They rely first on Louisiana Civil Code Articles 2240 and 1901, providing that “all acts may be executed under private signature, except such as positive laws have ordained to be passed in presence of a notary” and that “agreements legally entered into have the effect of laws on those who have formed them”. With these statements we cannot disagree; however, in the instant case they have no applicability since the question is “when were the instruments executed?”
We likewise agree with appellants’ statement that voluntary pooling clauses in oil, gas and mineral leases are legal. Mallet v. Union Oil and Gas Corporation, 232 La. 157, 94 So.2d 16 (1957), and McDonald v. Grande Corporation, (1962), La.App., 148 So.2d 441. However, the ultimate answer to the question before us is not to be found in the above cited cases or the code articles.
We find the two cases cited by appellee more appropriate to the instant casé. In Union Oil Company of California v. Touchet, supra, and Viator v. Haynesville Mercantile Company, Inc., Trustee, 230 La. 132, 88 So.2d 1 (1956), the owners of the leases attempted to form a voluntary pooling unit during the ten-year period but it was discovered one of the leases did not authorize the voluntary formation of a unit by declaration of the lessees. It was held, in both cases, that a valid unit had not been formed by such declaration. After expiration of the ten-year period, the landowner, who had not previously granted the lessee the right to voluntarily pool, agreed to the formation of a unit which was identical to the previous one. The new declaration was then filed for record. It was held the subsequent declaration was not retroactive in effect and did not interrupt the running of prescription, therefore, the mineral or royalty rights ceased to be of any effect at the expiration of the ten-year period.
We find the admission by appellants that the pooling agreements were not signed by Tenneco and Southern until April is decisive of the issue. Since the mineral reservation prescribed for non-user on March 29, 1966, the subsequent signing of the pooling agreement by Tenneco and Southern could not revive plaintiffs’ mineral rights and thus again burden the property of the Hintons with the mineral reservation previously owned by plaintiffs. We pretermit a discussion of whether the effective date was delayed until the instrument was filed since that issue is unnecessary to this decision.
We consider next plaintiffs’ alternative claim for $15,000 damages for the alleged breach of duty by the lessee, Chevron, in failing to obtain the signatures and complete the unit prior to the end of the lease term. The record is replete with evidence that Chevron’s employees made diligent effort to complete the unitization as quickly as possible. It is clear from the testimony that procuring of the school *461 board’s consent to allow voluntary pooling of its land, necessary to completion of the unit, required one of the employees to present the request to the board, after which the board was required to advertise for bids and approve the agreement at its next monthly meeting, which was February. The employee then went to New Orleans to obtain Chevron’s consent and then to Baton Rouge where the matter was placed on the emergency docket of the State Mineral Board. After approval by that body the counterparts of the Declaration of Pooling and Unitization were mailed to the respective parties, and follow-up telephone calls were made in an attempt to speed up the signing, in order to place the well in production prior to March 29th. Furthermore, the Hintons were approached in an effort to get them to agree to a joint lease or extension of the Baker lease but this effort failed. It was then that Chevron, in order to protect itself, purchased a lease from the Hintons to take effect at the expiration of the Baker lease. We conclude there was no negligence or dereliction of duty on the part of Chevron.
Our review of the record convinces us the trial court correctly decided both of the foregoing issues against plaintiffs.
The judgment is affirmed at appellants’ costs.