LEVY, Justice Ad Hoc.
This suit originated as one to cancel from the public records an oil, gas and mineral lease executed by the plaintiff, Mrs. Bevelle Nabers Crane, in her capacity as curatrix ■for Mrs. Nannie.Sue Nabers. Additionally she sought attorney fees and damages in accordance with the provisions of LRS 30:102. Named as defendants were the owners of the lease, Sun Oil Company and Marine Properties, Inc.
The district court ordered the lease can-celled, awarded attorney fees in the sum of $4500, but denied damages.
Defendants appealed. Plaintiff answered the appeal seeking an increase in the attorney fees and recovery of damages denied by the district court.
The Court of Appeal affirmed the judgment insofar as it ordered the lease can-celled. However, it amended the judgment by increasing the attorney fees to $5500, and awarding plaintiff $65,000 for damages which it held had been incurred as the result of defendants’ failure to cancel the lease. 223 So.2d 14. The Court of Appeal cited the case of Fite v. Miller, 192 La. 229, 187 So. 650 as its authority for so holding.
Defendants applied for certiorari, which we granted but limited our consideration of the case to assignment of error No. 5 which was that the Court of Appeal erred in awarding damages for the defendants’ refusal to cancel the lease. 254 La. 755, 226 So.2d 520.
LRS 30:102 provides:
“Whenever an optional oil or gas lease shall lapse because of the termination of the full period within which it may be kept alive by the payment of rentals, or because of failure on the part of the lessee to comply with the condition for the prevention of forfeiture, the lessee shall within ten days after written demand on the part of the lessor furnish the lessor with an acknowledged instrument, directing the cancellation of the lease on the records.
“If a lessee, having been given written notice demanding cancellation of the lease, *1022 fails or refuses to comply within ten days, he shall be liable to the lessor for a reasonable attorney’s fee incurred by the lessor in bringing suit to have the cancellation adjudged. He shall also be liable to the lessor for damages suffered by him by reason of his inability to make a lease because of the non-cancellation.”
The sole issue before us now is whether or not the plaintiff has shown that she was damaged by reason of her inability to enter into another lease because of the non-cancellation of the lease involved in this litigation. In this situation, as in all others involving a claim for damages, the burden is on plaintiff to establish with reasonable certainty, or by a preponderance of the evidence, that such damage occurred, as well as the extent thereof.
The lease herein was entered into on May 19, 1965 for a primary term of two years, and so long thereafter as oil, gas or other minerals were being produced. In that part of the Court of Appeal decision which is now final, it was held that the lease had lapsed at the end of the primary term which was May 20, 1967. The lessor’s demand for an instrument directing its cancellation was received by Sun Oil Company on June 26* 1967, and by Marine Properties, Inc. on August 3, 1967.
Plaintiff’s claim for damages is based principally on a letter dated July 1, 1967 addressed to her attorney and signed by six gentlemen who are residents of Mississippi. It is here quoted in its entirety, except for the signatures which are immaterial to this, discussion.
“We, the undersigneds, Nelson Gibson,, Chester Clark, Joe Scroggins, • Paul Lacoste, W. D. Mounger, and Wallace Harrison, wish to acquire an oil, gas, and mineral lease on the one-half. mineral interest in the above described lands from Mrs. Nabors, subject to a i/¿ royalty reservation and,'for a term of two-yearsr after Sun Oil Company has delivered a release to you of the lease granted' to them which expired May 19th, 1967.
“If granted this lease we will agree and bind ourselves to begin drilling a well thereon to test the Sparta formation and to a depth of 11,70.0 feet, unless conditions beyond our control prevent us from drilling to this depth, or of oil and/or gas is found in commercial quantities at a shallower depth, within .ninety days from the effective date of the lease, and will drill and complete the well as rapidly as possible.
“We make this offer with the full knowledge that Sun Oil Company owns a lease on the other half of the mineral interest in these lands and that it is entirely possible they may decide to refrain from joining us in this drilling venture and we may have to advance their half of the *1024 cost of the well and recoup this cost only from production from the well.
“If we are successful in completing a commercial oil or gas well we will proceed with dispatch to develop the entire lease interest.
“If this letter sets out generally acceptable terms to you we will enter into a formal agreement setting out these terms in more detail" (italics ours)
As we understand plaintiff’s contention it is that this letter constituted a binding offer to enter into a lease containing an unconditional obligation on the part of the offeror-lessees to drill a well on the plaintiff’s property; that she was unable to enter into the lease because the defendants refused to execute an instrument which would permit cancellation of their lease; that consequently, she was damaged by not having been able to have a well drilled on her property in accordance with the offer, and that the measure of such damage is the cost of drilling the well, which, according to the evidence, would be $65,000.00.
We agree — and defendant’s counsel conceded — that the offer was an unconditional offer to drill, provided that the offer was acceptable to plaintiff. The letter cannot be considered as a binding agreement of •lease for the reason that it was subject to ■the execution of a formal agreement (a lease) “setting out” the terms in “more detail”. In Woodville v. Kantrowitz, 115 La. 810, 40 So. 174 this court said:
“Whether, as in this case* the intention of the parties to reduce their contract to writing is itself expressed in writing, or is expressed verbally, is immaterial. The point is that something more is to be done before the contemplated contract is to be considered completed”.
The record does not show that plaintiff ever accepted the offer to lease. It may be that plaintiff, in her fiduciary capacity, could not have accepted the offer without Court approval and authorization, but the record does not disclose that any effort on her part was made to secure such authority. Nor did she — as she could have done — accept the proposal subject to the securing of such court authority as may be needed.
If the letter-agreement is to be considered as a binding agreement on the part of the offeror-lessees, subject only to its acceptance and formal execution of a lease, then it was not, in any way, affected by the failure of Sun Oil Company to have given plaintiff a release of its lease, as of the expiration date, i. e. May 20, 1967. The lettter-agreement (offering to lease the land and drill thereon) was dated after the lease with Sun Oil Company had expired by its terms and the letter took cognizance of the fact that the lessees had not given the land owner a release of the lease. The letter clearly stated that it would be effec *1026 tive for two years "after Sun Oil Company has delivered a release to you of the lease granted to them which expired May 19th, 1967.”
Therefore, under the terms of the offer-agreement, upon the cancellation of Sun Oil Company’s lease (by judicial decree) the lease for two years thereafter would have taken effect. Plaintiff could have — if she so chose — and provided that she had accepted the offer (and she may even now, if she has not released the potential lessees from their agreement — if it was a binding agreement without her acceptance) force the signors of the letter-agreement to enter into a two year lease in which they unconditionally agree to drill. Thus she has not suffered any damages “by reason of (her) inability to make a lease because of the non-cancellation” of the Sun Oil Company lease.
If, of course, it is contended that the signors of the letter-agreement had the right to withdraw the offer to lease and not comply with its provisions because of plaintiff’s failure to accept the same (although no time limit was fixed for her acceptance) or for any other reason, then this contradicts any argument that the letter-agreement was a binding obligation in itself.
It may be argued that plaintiff was damaged by the delay caused by the fact that Sun Oil Company should have cancelled the lease at its expiration date, i. e. May 20, 1967, whereas the lease was not can-celled until the decree of this Court, affirming the decision of the Court of Appeal with respect to the lease cancellation.1 This argument would have merit if plaintiff had proved that she could have entered into a lease which would have paid her a certain fixed annual rental or bonus. In such case she would have suffered a loss by reason of the lapse of time between May 20, 1967 and the date of actual cancellation of the lease, because the rental for that period could not be recouped in the future. But plaintiff does not make any such contention nor has she offered any such proof.
Plaintiff’s claim is based upon the contention that she has actually lost the chance or prospect which she would have had of being enriched by the drilling of the well. If, as stated above, she had a right to insist upon the signors of the agreement complying with their agreement (if, in fact, it was a binding agreement) to enter into the two year lease after cancellation of the Sun Oil Company lease, then she has not lost that “chance of prospect” or “uncertain hope” of oil being found on the land, by reason of any lapse of time. If drilling proves to be non-productive, she would not have suffered any loss. If drilling be productive the only possible loss plaintiff could have suffered by the lapse of time would be the loss of interest on that sum which she may have earned on the income from the well *1028 production during the period of time between May 20, 1967 and the date of actual cancellation of the lease.[1]
No such proof has been offered. Therefore, we repeat that plaintiff had not suffered any damage “by reason of her (herj inability to make a lease because of the non-cancellation” of the Sun Oil Company lease.
The loss, if any, which plaintiff suffered, was due either to the fact that the letter-agreement was not a binding agreement to drill because of plaintiff’s failure to accept it, or because plaintiff failed to exercise her right thereunder to have the offerors execute a lease when the Sun Oil Company lease was cancelled.
Fite v. Miller, supra, relied upon by the Court of Appeal is not authority for the award made by the Court of Appeal. This distinction is recognized in the brief of plaintiff, wherein it is stated that the Fite decision was cited to show “the measure of damages.”
In that case, this court said:
“A contract to drill a well in search of oil or gas is, in its very nature, one of which the Courts have no means of compelling actual or specific performance. Hence the only remedy for a breach of such contract is to sue for damages.”
and the court therefore held that the defendant, the lessee who had agreed to drill the well should be held in damages, and the court observed that one consideration for fixing such damages would be the cost of drilling the well.
If the signors of the letter-agreement were obligated to drill a well on plaintiff’s land during a two year period following the cancellation of the Sun Oil Company lease, and they failed to do so, plaintiff’s action for damages of $65,000.00 would be against the signors of the agreement to drill, for breach of their contract. Sun Oil Company, however, can only be held under the clear provisions of LRS 30:102.
Being of the opinion that the plaintiff has failed to establish that she was damaged by reason of the failure of the defendants to furnish plaintiff with a cancellation instrument as required by statute, we think the Court of Appeal erred in awarding judgment in her favor for that portion of her claim.
For the reasons assigned, the judgment of the Court of Appeal insofar as it awards $65,000 damages to plaintiff is reversed and set aside and her claim for such damages is hereby dismissed.
FOURNET, C. J., SANDERS and SUMMERS, JJ., are of the opinion a rehearing should be granted in this case.

. October 1, 1969.