ELLIS, Judge.
This is a suit by Dan McDonald Wilson and Mrs. Bevelle Nabers Crane, as Cura-trix of the interdict, Mrs. Nannie Sue Wilson Nabers, for the cancellation of an oil, gas and mineral lease of 75.39 acres in the Southwest Quarter of Section 33, Township 6 South, Range 8 East in Pointe Cou-pee Parish, granted by them to Lewis Gott-lieb on May 15, 1961. Defendants herein are Sun Oil Company and Marine Properties, Inc., assignees of the lease, and Gott-lieb, who owns a royalty interest therein. After trial on the merits, judgment was rendered dismissing plaintiffs’ demand, and they have appealed.
Plaintiffs are the owners of the 75.39 acre tract covered by the Gottlieb lease, and are also the owners of a 225 acre tract situated in the Northwest Quarter of Section 33, and the East half of the Northeast Quarter of Section 34, Township 6 South, Range 8 East. Both of these tracts lie in what is known as the Fordoche field. On May 19, 1965, Mrs. Crane executed a lease of Mrs. Nabers’ undivided one half interest in the 225 acre tract to Sterrett Procter, with a primary term of two years.
On December 5, 1966, the Department of Conservation of the State of Louisiana created a number of drilling units in the Fordoche field. By orders 189 K and 189 L, Sand Unit F, composed of the North *345 west Quarter of Section 33, and Sand Unit K, composed of the Southwest Quarter of Section 33 were created. On February 24, 1967, Sun began drilling in Sand Unit K, and, on June 22, 1967, obtained production therefrom.
On April 21, 1967, Sun wrote Mrs. Crane’s attorney and advised him that a portion of the property covered by the Procter lease was included in Sand Unit K, and that the lease was being maintained in effect as to all properties covered thereby by virtue of the drilling thereon. Attached to the letter was a plat of Sand Unit K, the Southwest Quarter of Section 33, which showed no dimensions, but which indicated the acreage covered by the Gottlieb lease to be 70.77 acres. This survey also showed that the line between the 225 acre tract and the 75 acre tract was South of and not coincident with the line dividing the Northwest and Southwest Quarters of Section 33.
On May 1, 1967, Sun’s position in this respect was rejected by Mrs. Crane’s attorney. On May 16, 1967, Sun reiterated its position and advised that payments under both leases would be made on production from Sand Unit K. On May 19, 1967, the primary term under the Procter lease expired. On July 28, 1967, the first rental division order was mailed to the parties involved in Sand Unit K. This order was received but not signed by Mrs. Crane.
On August 23, 1967, suit was filed for the cancellation of the Procter lease by Mrs. Crane. Eventually, this litigation was concluded in favor of the plaintiff, and the lease was ordered cancelled. See Crane v. Sun Oil Company, 223 So.2d 14 (La.App. 1 Cir. 1969); Crane v. Sun Oil Company, 255 La. 1017, 233 So.2d 919 (1970). It was the sense of our opinion that lands lying in the Northwest Quarter of a section could not be construed to lie in a Unit consisting entirely of land in the Southwest Quarter of the same section.
On August 31 and September 25, 1967, respectively, the first two royalty checks for production out of Sand Unit K were mailed to Mrs. Crane. On October 23, 1967, the checks were returned with a letter refusing to accept them, since, in the answer filed in the Crane case by Sun, they were alleged to be in payment of royalties for production in Sand Unit K under the Procter lease.
On the same day, a second letter was written demanding cancellation of the Gott-lieb lease for non-payment of royalties due thereunder for production from Sand Unit K. On October 27, 1967, Sun tendered two checks, one for royalties allegedly due under the Gottlieb lease, and one for royalties allegedly due under the Procter lease. In that letter, it authorized Mrs. Crane to retain the Gottlieb check without prejudice to her rights under the Procter lease.
On November 7, 1967, both checks were returned. It was stated that the Gottlieb lease was already breached, and the check came too late. In addition, it was claimed that the lease was for 75.39 acres, whereas the payments were being made on the basis of 70.77 acres. Cancellation was demanded on the additional grounds that all royalties due had not been tendered.
On November 20, 1967, cancellation of the Gottlieb lease was demanded on behalf of Dan McDonald Wilson, on the same grounds as alleged by Mrs. Crane. Finally, on July 3, 1968, this suit, asking cancellation of the Gottlieb lease as to both Mr. Wilson and Mrs. Nabers, was filed.
Basically, plaintiffs claim they are entitled to cancellation for two reasons, the first of which is non-payment of royalties due. It is their position that they could not accept the first checks sent them without running the risk of losing their right to have the Procter lease cancelled. Such a tender of payment, they claim, is no payment at all.
Secondly, they allege that payment of royalties based on 70.77 acres instead of 75.39 acres by checks which, if endorsed, *346 might forestall their being able to exert their claim for royalties on the full acreage set forth in the lease, does not constitute a tender of royalties actually due, and they are entitled to cancellation on that account.
The law relative to cancellation of leases for non-payment of royalties thereunder is well settled. As stated in Fontenot v. Sunray Mid-Continent Oil Company, 197 So.2d 715 (La.App. 3 Cir. 1967):
“The failure to pay production royalties under a mineral lease for any appreciable time, without justification, amounts to an active breach of such lease which entitles the lessor to cancellation without first placing the lessee in formal default. Sellers v. Continental Oil Co., La.App. 3 Cir., 168 So.2d 435; Pierce v. Atlantic Refining Co., La.App. 3 Cir., 140 So.2d 19, certiorari denied; Bailey v. Meadows, La.App. 2 Cir., 130 So.2d 501, certiorari denied. See also: Bollinger v. Texas Co., 232 La. 637, 95 So.2d 132; Melancon v. Texas Co., 230 La. 593, 89 So.2d 135. (Under this jurisprudence, however, the mineral-owner lessor is not entitled to cancellation when adequate reason for the delay is shown by the mineral lessee. Broadhead v. Pan American Petroleum Corp., La.App. 3 Cir., 166 So.2d 329; Fawvor v. United States Oil of Louisiana, Inc., La.App. 3 Cir., 162 So.2d 602.)”
In this case, the record reveals that there has never been a withholding of royalty payments. Payment of some sort was tendered monthly, hut was rejected by plaintiffs because they did not conform to plaintiffs’ position in the disputes relative to the two leases. However, the tenders made by Sun were always consistent with the position assumed by it throughout the disputes. Although each side of this case questions the good faith of the other in maintaining their respective positions, our examination of the record does not bear out either contention. We are of the opinion that the disputes which have arisen between the parties are bona fide.
If it be assumed, arguendo, that the defendants herein are guilty of not making royalty payments, because the payments tendered could not be accepted by plaintiffs without surrendering certain rights or abandoning their positions, we are still of the opinion that plaintiffs are not entitled to cancellation, which is the only remedy sought herein. We think that there was an honest doubt as to the rights of the parties under the Procter lease, and that there exists a bona fide, and unresolved, dispute as to the acreage of the tract covered by the Gottlieb lease. All payments tendered by Sun have been done in a manner consistent with its position relative to the two disputes. We do not believe that, when there is an honest bona fide dispute as to rights under a mineral lease, either party should be placed in the position of acting at his peril. In Rudnick v. Union Producing Co., 209 La. 943, 25 So.2d 906 (1946), in refusing to cancel a lease, the court said:
“In Louisiana, the right to dissolve a lease is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Company, Inc., 172 La. 828, 135 So. 372, and cases there cited. In this case there were grounds for honest doubt as to the rights of the parties. This Court has not, and will not, penalize a litigant lessee by dissolving a lease held technically in default when there is a bona fide defense. The plaintiffs request for cancellation should, therefore, be denied.”
We hold that, in view of the fact that bona fide disputes exist and have existed between the parties hereto, plaintiffs are not entitled to have the lease cancelled because of the tendering of royalties by defendants in a manner unacceptable to plaintiffs, but consistent with defendants’ position in the disputes.
Since cancellation is the only remedy sought, we do not feel it necessary to go into the merits of the acreage dispute. We will point out, however, that such de- *347 ermination cannot be made from the record as it presently stands. Neither surveyor made an independent survey to establish the levee right of way line which bounds the tract on the southwest, as it existed in 1938, when the subject property was severed from the parent tract. One surveyor scaled the location from a map of the center line of the right of way, but failed to establish the location on the ground. The other accepted the present location of the right of way as established by the U.S. Engineers, arid'mád'e rio independent determination of the line as of 1938. Since the location of this line is' the most glaring area of disagreement between the surveyors, we think their failure to make an independent location thereof would make it impossible to' reach kny conclusion on that point.
The judgment appealed from is affirmed, at plaintiffs’ cost.
Affirmed.