290 So.2d 844 (1973)
Dan McDonald WILSON et al.
v.
SUN OIL COMPANY et al.
No. 52764.
Supreme Court of Louisiana.
August 20, 1973.
Rehearing February 18, 1974.
*845 Ashton L. Stewart, Laycock, Stewart & Preis, Baton Rouge, for plaintiff-applicants.
Liskow & Lewis, by Austin W. Lewis, George C. Schoenberger, Jr., Thomas D. Hardeman, New Orleans and Lafayette, Dudley L. Guilbeau, Houston, Tex., Louis G. Shushan, New Orleans, E. Leland Richardson, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for defendants-respondents.
MARCUS, Justice.
Plaintiffs sued for cancellation of an oil, gas and mineral lease for the failure of the lessees to pay production royalties for an appreciable length of time without a justifiable excuse. The trial court dismissed plaintiff's suit and the Court of Appeal affirmed.[1] We granted a writ of review.[2]
Plaintiffs, Mrs. Bevelle Nabers Crane, curatrix of the interdict, Mrs. Nannie Sue Wilson Nabers, and Dan McDonald Wilson, each own an undivided one-half interest in a tract of land located in the Southwest Quarter of Section 33, Township 6 South, Range 8 East, in Pointe Coupee Parish. In 1961, they leased the minerals to Lewis Gottlieb. The land was described in the lease as containing 75 acres; however, the lease was later amended to read 75.39 acres. This lease will be referred to as the "Gottlieb" lease. Subsequently, Gottlieb assigned the lease to Sun Oil Company and Marine Properties, Inc., and he purchased an overriding royalty interest. Sun Oil Company is the operator of the lease and, for convenience, we will refer to defendants collectively as "Sun."
All of the property affected by the Gottlieb lease was placed in a drilling unit by the Commissioner of Conservation by order effective December 1, 1966. The unit was designated as Sand Unit K. Sun commenced operations on this unit, and a well was successfully completed as an oil producer on June 22, 1967.
A copy of the survey plat of Sand Unit K, showing that the Gottlieb lease contained only 70.77 acres, was sent by Sun to the attorney for the plaintiffs in April of 1967. Thereafter, on July 28, 1967, Sun mailed to plaintiffs division orders showing their interest in Sand Unit K. These division *846 orders were never signed by plaintiffs or returned to Sun. No complaint was made by plaintiffs to Sun as to their correctness or as to the correctness of the survey.
On August 31, 1967, two months and nine days after production, Sun mailed to plaintiffs checks covering their share of royalties on the unit production based on 70.77 acres. A second check was sent on September 25, 1967. The royalty payment to Mrs. Crane combined in a single check the royalties due her on production from Sand Unit K, both under the Gottlieb lease on the Southwest Quarter of Section 33 and under another lease on the Northwest Quarter of Section 33, hereinafter referred to as the "Proctor" lease. At this time, Mrs. Crane was involved in litigation with Sun on the Proctor lease in which she was seeking cancellation of that lease for nonproduction.[3]
These two checks were held by the plaintiff, Mrs. Crane or her attorney, until October 23, 1967. By letter of this date, the two checks were returned to Sun with the complaint that they appeared to combine royalty payments from both leases. Mrs. Crane took the position that her acceptance of such payment might jeopardize her then pending lawsuit for cancellation of the Proctor lease. In a separate letter of October 23rd, cancellation was demanded on the ground that royalties had not been paid as required by the lease. Sun thereupon issued separate royalty checks payable to Mrs. Crane dated October 27, 1967. In the transmittal letter accompanying these checks, Sun unconditionally offered plaintiff, Mrs. Crane, the right to cash the Gottlieb lease royalty checks without prejudice to her position in the litigation involving the Proctor lease.
On November 7, 1967, Mrs. Crane returned the Gottlieb royalty lease checks previously paid to her, stating that the Gottlieb lease had already been actively breached by the deliberate failure to pay the royalties due thereunder. The demand for cancellation made in the October 23rd letter was renewed. The November 7th letter raised for the first time the acreage dispute as to payment of royalties based on 70.77 acres rather than the 75.39 acres recited in the lease agreement.
The plaintiff, Wilson, made a similar demand for cancellation of the lease on November 20, 1967.
On July 3, 1968, plaintiffs filed this suit seeking cancellation of the Gottlieb lease. Thereafter, plaintiffs ascertained that Gottlieb had purchased an overriding royalty interest and by letter dated July 19, 1968, demand was made upon Gottlieb for cancellation. The plaintiffs then amended their petition on August 3, 1968 to include Gottlieb as a party defendant.
Plaintiffs contend that Sun actively breached the lease by: (1) tendering royalty payments based on only 70.77 acres, whereas the lease provided for payment on 75.39 acres; (2) tendering checks with the stipulation written thereon that acceptance of payment would constitute full payment,[4] thus making applicable the doctrine of accord and satisfaction; and (3) making such improper tender for a period of thirteen months. Plaintiffs contend that payment under these circumstances constituted a failure to pay production royalties for an *847 appreciable length of time without justification, which amounted to an active breach of the lease. They further contend that, under R.S. 30:105 and 106, Sun was required to pay royalties to plaintiffs on all 75.39 acres, as set forth in the lease.
Defendants resist the demand for cancellation, contending that there was no active breach of the lease in that: (1) initial royalty payment was made on August 31, 1967, some two months and nine days after production or, at most, four months after production when separate checks covering the Gottlieb lease royalties were sent to Mrs. Crane; (2) the period of improper tender could only be considered up to their receipt of plaintiffs' letters of October 23, November 7 and November 20 of 1967, demanding cancellation of the lease; and (3) Sun had tendered royalty payments based upon its survey and had no knowledge of any acreage dispute until receipt of Mrs. Crane's letter of November 7, 1967, in which she demanded cancellation of the lease. Accordingly, defendants contend that, if there were in fact a breach under these circumstances, it was, at most, passive, requiring plaintiffs to place them in default prior to demand for cancellation; therefore, since plaintiffs never put them in default, this suit for cancellation should be dismissed.
In order to decide the merits of plaintiffs' claim for cancellation of this mineral lease, we must first determine whether defendants breached the lease contract and, if so, whether it was an active breach or a passive one, requiring the putting in default.
It is clear that, if there is an active violation of the obligations of a lease, no formal demand or putting in default is necessary. Article 1932 Civil Code. When the breach is a passive one, a putting in default is required. Article 1933 Civil Code.
Our jurisprudence has developed the rule that failure to pay production royalties under an oil and gas lease for any appreciable length of time without justification amounts to an active breach of such lease which entitles the lessor to a cancellation thereof without the necessity of placing the lessee in formal default. Bollinger v. Texas Company, 232 La. 637, 95 So.2d 132 (1957); Melancon v. Texas Company, 230 La. 593, 89 So.2d 135 (1956); Fontenot v. Sunray Mid-Continent Oil Company, 197 So.2d 715 (La.App. 1967), cert. den.; Sellers v. Continental Oil Company, 168 So.2d 435 (La.App. 1964); Pierce v. Atlantic Refining Company, 140 So.2d 19 (La.App. 1962), cert. den.; Bailey v. Meadows, 130 So.2d 501 (La. App.1961), cert. den.
However, in cases where the failure to pay production royalties is justified under the facts and circumstances, the breach is considered passive, requiring a putting in default. Broadhead v. Pan American Petroleum Corporation, 166 So. 2d 329 (La.App.1964), cert. den.; Fawvor v. United States Oil of Louisiana, Inc., 162 So.2d 602 (La.App. 1964), cert. den. See also Alvord v. Sun Oil Company, 271 So.2d 561 (La.App.1972) and Hebert v. Sun Oil Company, 223 So.2d 897 (La.App. 1969).
Under the facts and circumstances of this case, we cannot say that there was an unreasonable delay without justification on the part of Sun for its failure to pay production royalties on 75.39 acres. Rather, the breach was passive necessitating the placing of Sun in formal default as a prerequisite to cancellation of the lease. The cases relied upon by plaintiffs in which there was an active breach of a lease are inapposite.[5]
*848 It should first be observed that this proceeding is one solely for the cancellation of a mineral lease. All parties concede that evidence introduced on the acreage issue was for the purpose of this litigation only. Consequently, it is unnecessary for us to determine the merits of the acreage dispute at this time.
Conceding a position most favorable to plaintiffs, i. e., that the payment of royalties on 70.77 acres was incorrect, this did not amount to an active breach under the facts and circumstances of this case. At most, this was a passive breach, which we will hereinafter demonstrate, requiring demand and a putting in default.
As previously stated, initial royalty payment was made on August 31, 1967, some two months and nine days after first production. A second check was sent on September 25, 1967. These checks were retained by Mrs. Crane or her attorney until October 23rd, at which time they were returned with the only complaint that the royalty payments on the Gottlieb and Proctor leases were combined instead of being separate. Promptly, Sun returned separate checks on October 27th. In any event, there was a delay of only about four months, at most, in the initial payment to Mrs. Crane, of which about two months were consumed by Mrs. Crane's delay in returning the checks for correction. Thereafter, payments were regularly tendered up to the filing of the suit.
As to the plaintiff, Wilson, the initial delay of two months and nine days after production was the longest period of delay in tendering royalty payments to him. Thereafter, payment was tendered to him monthly up to the date of the filing of the suit.
Plaintiffs contend that payment was not made for a period of thirteen months after production, an unreasonable delay for an appreciable length of time without justification. This contention is completely without merit. It seems to ignore the demands for cancellation made by plaintiffs in their letters of October 23, November 7 and November 20 of 1967. Once having demanded cancellation of the lease in these letters, plaintiffs are estopped from thereafter urging non-performance on the part of the defendants. Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749 (1916).
It is significant that Sun predicated its payments upon the acreage determined by its surveyor. A copy of this survey plat of Sand Unit K showing that the Gottlieb lease contained only 70.77 acres had been furnished to the attorney for plaintiffs in April, 1967, well prior to the date of first production. Despite this, no complaint about the acreage computation was made to Sun until plaintiffs, through their attorney, demanded outright cancellation of the lease. Furthermore, Sun mailed division orders to plaintiffs showing their interest in Sand Unit K and with the survey plat in their possession, they could have readily ascertained that payment was based on 70.77 acres.
Although it is claimed by plaintiffs that their acreage dispute was well known to defendants, a review of the record convinces us to the contrary. As previously indicated, the letter of November 7, 1967 refers to this issue for the first time. The prior dispute between the parties dealt with the Proctor lease litigation and the fact that the initial royalty checks improperly included payments under both leases. No *849 complaint was made by plaintiffs that payment was not made based upon the acreage set forth in the Gottlieb lease until November 7, 1967. The testimony of counsel for plaintiffs also makes it perfectly clear that, while he was well aware of the fact that the defendants were relying upon a survey plat showing plaintiffs' interest at 70.77 acres as far back as April, 1967, he made no complaint in this regard at the time as, admittedly, all discussions had been in connection with the Proctor lease. Despite this knowledge of the variance in the acreage computation between the survey plat and the Gottlieb lease, plaintiffs made no complaint until November 7, 1967.
Therefore, we conclude that the basis for cancellation now sought was never brought to the attention of the defendants, despite the fact that plaintiffs were well aware of it, until the letter of November 7, 1967, when peremptory cancellation of the lease was demanded.
Plaintiffs never formally or otherwise placed defendants in default for their alleged incorrect payment of royalties prior to demand for cancellation of the lease; that is, they never formally requested payment in accordance with their contentions and the terms of the lease. Thus, they never gave Sun notice that they regarded the lease as breached by the incorrect payments, so as to afford them a reasonable opportunity to comply with the contract.
Accordingly, we conclude that the failure to pay the proper amount of royalties under the facts and circumstances of this case was not an active breach of the lease contract. Such failure was not unreasonable or unjustified. The breach, if any, was passive, requiring a putting in default as a condition precedent to a demand for cancellation. Plaintiffs failed to place defendants in default. In view of our conclusions, the other contentions raised by plaintiffs need not be considered.
Hence, the plaintiffs' demand for cancellation of the oil, gas and mineral lease herein was properly rejected.
For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed.

ON REHEARING
SUMMERS, Justice.
At the outset it should be noted that this suit to cancel an oil and gas lease for the nonpayment of production royalties is not a case where the failure involves the total royalties due under the lease. It is, instead, a case where the claim is that only a small fraction of the royalties due were not paid that is, defendant lessee paid royalties on 70.77 acres when the contention was that royalties were due on 75.39 acres. What is involved, therefore, is the alleged nonpayment of royalties on 1/17 or six percent of the total claimed to be due. As to the other 16/17ths or 94 percent, the royalties were computed on this acreage and an attempt was made to pay them.
A rehearing was granted in this case to determine whether defendants were justified in withholding the production royalties alleged to be due from 4.62 acres of the subject lease. Plaintiffs' contention is that a factual dispute existed between the lessors and lessees over the amount of acreage in the Gottlieb lease when the royalty payments were first tendered. It is plaintiffs' contention that they could not accept what they considered to be a partial payment of royalties without bringing about an accord and satisfaction over the 4.62 acres in dispute.
Thus plaintiffs argue that the existence of the dispute over the acreage, coupled with the stipulation on the checks tendered by defendants reading, "This endorsement is an acknowledgment or receipt in full payment for crude oil and/or gas as per accompanying statement," would constitute an accord and satisfaction barring any future claims for the production from the 4.62 acres in dispute. In effect the argument was that a tender under these conditions was no tender, and hence defendants have *850 defaulted in their obligation to promptly pay production royalties. Union Producing Co. v. Pardue, 117 F.2d 225 (5th Cir. 1941); Linda Mercantile Corp. v. Bowers, 230 So. 2d 302 (La.App. 1969); Braudaway v. United Equitable Ins. Co., 208 So.2d 359 (La. App.1968); Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App.1961).
We have carefully reviewed the correspondence relied upon by plaintiffs to support their contention that a dispute existed, together with the testimony on the subject taken at the trial. To say the least, the dispute, if it did exist, did not involve 4.62 acres. To the contrary, only .65 of one acre was involved in the alleged dispute to the north. This dispute had to do with whether .65 of an acre should be placed in Sand Unit K or in the contiguous unit to the north. The 4.62 acres concerning which plaintiffs contend royalties were withheld were situated on the southwest boundary of the leased premise. We find no evidence in the record that plaintiffs were disputing the survey defendants were relying upon to delete this acreage from the lease. Nor can we find that the survey was not a reasonable basis for withholding royalties on the 4.62 acres.
Since a pre-existing, well-defined dispute is an indispensable prerequisite to invoking the doctrine of accord and satisfaction, and since we find no such dispute with regard to the 4.62 acres as to which royalties were withheld, a valid tender of royalties was timely made, and no basis has been established for the cancellation of the lease. The alleged dispute concerning .65 of an acre involved its inclusion or exclusion from the unit, and this fractional acre did not involve reduction of royalties. To the contrary, royalties were calculated on this .65 of one acre and included in the checks defendants tendered to plaintiffs.
Granting the rehearing did not concern the other issues the original opinion resolved.
For the reasons assigned we readopt and reaffirm the reasons assigned in our original opinion, and the original judgment and decree rendered herein is reinstated and made the judgment of the Court.
NOTES
[1] 265 So.2d 344.
[2] 262 La. 1164, 266 So.2d 446.
[3] Mrs. Crane contended in that litigation, that her title was limited to the NW¼ of Section 33, T6S, E8E, and no portion of her property was in Sand Unit K, hence, production on that unit in the SW¼ did not extend the term of her lease with Sun Oil Company and Marine Properties, Inc. Cancellation of the lease was ordered. Crane v. Sun Oil Company, La.App., 223 So.2d 14. This Court granted certiorari limited to the question of the damage award. See 255 La. 1017, 233 So.2d 919 (1970).
[4] The checks contained the following stipulation: "This endorsement is an acknowledgment or receipt in full payment for crude oil and/or gas as per accompanying statement."
[5] In Melancon v. Texas Company and Bollinger v. Texas Company, this Court concluded that the sole reason for withholding royalty payments for 15 and 12 months, respectively, was to exercise coercion and this conduct constituted an active breach of the contract. The lessee in Bailey v. Meadows failed to pay production royalty for approximately 18 months despite repeated demands for payment. There was no explanation given in Sellers v. Continental Oil Company for the thirty-three months' delay in payment of royalties to a co-lessor. In Pierce v. Atlantic Refining Company, no payment of royalties was tendered for seven months without reason or justification. In Fontenot v. Sunray Mid-Continent Oil Company, the failure to pay the lessor royalties due on production for some thirty months was held to constitute an active breach.